MOSE GREEN V. STATE.

No. 24302. April 6, 1949.
Appellant's Motion for Rehearing Granted June 8, 1949.

*Thomas B. Burch,* of Sour Lake, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

KRUEGER, Judge.

The offense is theft of hogs. The punishment assessed is confinement in the state penitentiary for a term of 4 years.

The record reflects that on or about the 12th day of December, 1947, appellant, his brother Ben Green, and a nephew, Homer Green, met in Saratoga and after drinking some whiskey, they drove out some five or six miles near where Cal Brown and appellant lived and there, in the woodland, killed five hogs belonging jointly to W. W. Minter and his deceased son. They loaded these hogs into their automobile and carried them to Beaumont to a tourist cabin occupied by Homer Green and his family where they dressed the hogs. However, before they had finished dressing the hogs, the officers arrived and took charge of the dressed hogs, and later delivered them to the owner. About three days after appellant had been arrested and while confined in jail, he made a confession to the sheriff in which he admitted his guilt. On his trial he claimed that at the time his nephew was shooting the hogs, he was under the impression that they were his, appellant's, as he had some hogs running on the range in that vicinity at the time. Much evidence was introduced relating to the habits of hogs, ear marks on hogs, etc. The foregoing is a brief summary of the facts proved on the trial.

Appellant brings forward four complaints, the first of which relates to the court's action in declining to submit to the jury his requested charge to the effect that if the jury believed from the evidence that appellant did not exercise any act of dominion or control over the hogs in question until after they were dead, or if they had a reasonable doubt thereof to acquit him. In connection therewith, he requested an instruction that although the jury believed from the evidence beyond a reasonable doubt that appellant did fraudulently take from the possession of W. W. Minter the bodies of dead hogs and that such taking was without the consent of the owner, to find him guilty of misdemeanor theft. If the court had given this charge, it would have been contradictory to the court's charge on the law of principals. Moreover, the court instructed the jury that if appellant had no part in the original taking of the hogs, and did

not aid by acts or encourage by words the act of Homer Green in shooting the hogs and his only participation occurred after the hogs were dead or if they had a reasonable doubt thereof, to acquit him. It occurs to us that this was all he was entitled to.

By Bill of Exception No. 4 he complains of the court's action in permitting the state to prove by W. W. Minter that he and his son were partners in the hogs in question; that his son was dead, having died about one year prior to the time the hogs in question were taken; that he, the witness, had charge of them, looked after them, and marked them with his son's mark. The objection urged thereto was that it was in violation of R. C. S., Art. 3716. This is a special statute which relates only to actions by or against executors, administrators, or guardians in which judgment be rendered for or against them as such and is not applicable to cases of this nature.

By Bill of Exceptions No. 5 appellant contends that state's counsel in his argument to the jury made the following remarks: "You heard his confession made to the sheriff and you heard his statement on the witness stand. I want to tell you that when they hire lawyers they change up their confessions when they testify," to which appellant objected. The court qualified the bill and in his qualification states that the county attorney did not say the lawyers had changed defendant's confession, but did say that the defendant had hired lawyers between the time he made the confession and the time he testified; that it was admitted that lawyers were hired after he made the confession. Appellant accepted the bill as qualified and is bound thereby. In our opinion, the bill as qualified fails to reflect any error. It seems to be the settled law in this state that an argument by state's counsel constitutes reversible error only where the language complained of is manifestly improper, harmful, and prejudicial or where a mandatory provision of the statute is violated or some new and harmful fact is injected into the case. See Dinklage vs. State, 198 S. W. (2d) 578, and cases there cited.

Appellant complains because the court, at the close of the state's case, declined to submit his special requested instruction to the jury of not guilty. He claims that he was entitled to such an instruction on the ground of a variance between the allegation in the indictment and the proof, in this, that the indictment charged that the hogs in question were the property of and in the possesesion of W. W. Minter, whereas, the evi-

dence shows that the animals were not in his actual possession but merely in his constructive possession. We see no merit in his complaint. The mere fact that the hogs were on the open range did not affect his actual possession of them, since animals cannot wander out of the possession of the owner and into the possession of another party. See Oakley v. State, 214 S. W. (2d) 298, and cases there cited. Mr. Minter was at least a part owner and had the actual care, control, and management of them.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

The defense of a mistake of fact—that is, that appellant believed the hogs taken belonged to him—was raised by appellant's testimony. The trial court so recognized, and gave the following instruction relative thereto, viz.:

"You are charged that if you believe the defendant, Mose Green, took the two head of hogs belonging to W. W. Minter, if you find that he so acted under a mistaken belief that they were his hogs, in good faith, believing the two head of hogs were his own property, and such belief did not arise from want of proper care on his part, or if you have a reasonable doubt as to whether or not he acted under such mistaken, you will acquit the defendant and say by your verdict 'not guilty.' "

The charge was predicated upon the provisions of Art. 41, P. C., which reads as follows:

"If a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal he is guilty of no offense, but the mistake of fact which will excuse must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct, and it must be such mistake as does not arise from a want of proper care on the part of the person so acting."

It is appellant's contention that the provision of said article requiring that the mistake of fact "not arise from a want of proper care" does not apply in cases of theft where the mistake of fact relied upon as a defense is that of belief of owner-

ship, as here presented. In keeping with that contention, appellant excepted to the charge above set out as placing a greater burden upon him than required by law.

It was appellant's further contention that he was entitled to have the jury instructed to the effect that if he in good faith believed the hogs belonged to him at the time they were killed he would not be guilty. As supporting these contentions, reliance is had upon the cases of Bray v. State, 41 Tex. 203, Neely v. State, 8 Tex. App. 64, and Fields v. State, 124 S. W. 652.

The decision in Bray's case was by the supreme court of this state at a time when that court had appellate jurisdiction in criminal cases. In that case, Bray was convicted of stealing the cow of Hamner. His defense was that he believed the cow belonged to his father and was taken with that belief. In accordance with that defense, Bray asked that the jury be instructed to acquit if the cow was taken under an honest belief that she belonged to his father. This charge the trial court refused. Instead, the trial court instructed the jury in accordance with statutes then in effect—in all material aspects the same as our present Arts. 41 and 42, P. C.—that the defense of mistake on Bray's part was not availing if he "did not act with proper care in ascertaining the true ownership of the cow." In holding that Bray was entitled to the instruction requested, the court said:

"These articles refer to acts 'otherwise criminal,' or acts in themselves criminal if unexcused, and not to acts which become criminal only when committed with a fraudulent or felonious intent. For example, to sell liquor without a license is an offense, though the clerk who sells it may carelessly take it for granted that his employer had a license. (Tardiff v. The State, 23 Tex. 169.) So the criminality of a homicide, committed under the mistaken belief of the existence of facts which excuse the act, may be affected by the want of proper care inducing the mistake. (1 Bish. Crim. Law, 384.) In theft, the fraudulent intent is a necessary constituent of the offense. The act of taking itself, without such an intent, is a mere trespass. If the taking be under an honest, though mistaken, claim of right, it would seem hardly necessary to cite authority that it is not theft. (4 Bl. Comm., 232; 1 Hale P. C., 509; Smedley v. State, 30 Tex., 214; Dignowitty v. State, 17 Tex., 527.)"

The holding in the Bray case was followed and cited with approval in the Neely case, supra. In that case, Neely was convicted of cattle theft, upon facts showing that he bought from

Mitchell a beef which belonged to Dean. His defense was that of mistakenly believing that he was taking the property he had bought from Mitchell. The trial court limited the defense to the exercise of proper care by Neely to ascertain the true ownership of the cow. Such charge was held erroneous, under the authority of the Bray case, supra.

In the Fields case, supra, we have a case very similar in point of fact to the instant case. In that case, in submitting the defense of mistake, the trial court instructed the jury as follows:

"If you believe defendant took or participated as a principal in the taking of Henry Davis' hog, but believe he so acted under a mistaken claim of right, in good faith believing the hog to be his own property, or if you have a reasonable doubt as to whether or not he acted under such mistake, you will acquit the defendant."

Such charge was approved as against the contention that it did not clearly and explicitly submit the defense of mistake of fact. It is a charge to the same effect that appellant insists he was here entitled, unencumbered by any limitation as to the exercise of proper care before relying upon the belief upon which the mistake of facts is predicated.

In Forrester v. State, 69 Tex. Cr. R. 62, 152 S. W. 1041, the conviction was for receiving stolen property knowing it to have been so acquired. A dress was stolen from a store in Waco. At the instance of the thief, the dress, after having been placed in a box, was by express shipped to Taylor at Fort Worth. Taylor, who was in Dallas, was called over the telephone to go to Fort Worth and get the box. Forrester went to Fort Worth and, after signing the name of Taylor, received the box from the express office. He did not open the box or know its contents at the time he received it. Under this state of facts, the jury was instructed to the effect that if Forrester " 'did not know that the said dresses were stolen or did not receive said goods under circumstances sufficient to satisfy a man of ordinary intelligence and caution that same dresses were stolen, you will acquit him.' "

In holding said charge erroneous, we said:

"Appellant's criminality in this case would not depend upon whether he exercised ordinary diligence and caution to ascertain whether the dresses were stolen or not. The statute requires

that he must know the goods to have been stolen when he received them. Knowledge on his part is essential, and not only so, but the fraudulent intent must exist as well at the time he received the goods. The mere reception of stolen property is not criminal. As before stated, there must be knowledge on his part that the goods were stolen; and he must receive them with the fraudulent intent to convert them to his own use and deprive the owner of the goods or their value."

The Bray and Neely cases were cited, among others, as supporting the conclusion expressed.

The holding in the Bray case, supra, appears to have been sanctioned in Barton v. State, a robbery case, 227 S. W. 317, where it was said:

"The animo furandi is an element of robbery as it is of theft, and both in theft and robbery the taking of goods upon a bona fide claim of right may negative any intent to steal."

See, also, Minica v. State, 99 S. W. 2d 934.

In 32 Am. Jur., Larceny, Sec. 41, p. 936, it is said:

"An intent to steal property and a bona fide claim of right to take it are incompatible. One who takes property in good faith, under fair color of claim or title, honestly believing that he is its owner and has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is mistaken in such belief, since in such case the felonious intent is lacking."

Attesting authorities from other jurisdictions are there cited.

The hogs which appellant and his nephew were charged with having stolen, by shooting them, were at the time running at large upon the open range. According to appellant's contention, he had hogs running in the same vicinity or range, in connection with which fact we note that he testified as follows:

"I did not have any intention or purpose to steal or appropriate anyone else's hogs to my own use and benefit at this particular time. When these hogs were shot I sure did think they were my hogs. I would not have instructed Homer to shoot them, and if I did not have a claim for hogs there I would not have been hunting them."

We think that appellant has brought himself within the rule of law above stated and that he was entitled to have the jury instructed in accordance therewith, to the effect that if he acted under a mistaken claim of right, in good faith believing that the hogs belonged to him, he would not be guilty—and this, without reference to whether that belief "did not arise from want of proper care" on his part.

In order that no confusion may arise, it should be again pointed out that the rule of law here announced and the interpretation placed upon Art. 41, P. C. apply only to those crimes where the unlawful intent is an essential element without which the offense does not arise.

Believing that the charge, as given, placed upon the appellant a greater burden than that authorized by law, appellant's motion for rehearing is granted, the judgment of affirmance set aside, and the judgment is now reversed and the cause is remanded.

Opinion approved by the Court.