Tommy Lee JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 48978.

Court of Criminal Appeals of Texas.

March 26, 1975.

Rehearing Denied April 16, 1975.

Thomas Rocha, Jr., on appeal only, San Antonio, for appellant.

John H. Green, Dist. Atty and Dennis Cadra, Asst. Dist. Atty., Odessa, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION TO REINSTATE APPEAL

DOUGLAS, Judge.

This is an appeal from a conviction for murder. The jury assessed punishment at sixty years.

This cause was dismissed in a per curiam opinion because the record contained no notice of appeal. By a supplemental transcript it is shown that notice of appeal was timely given. The motion to reinstate is granted.

In the controlling issue, complaint is made that the district attorney committed reversible error in his argument. We overrule this contention.

The indictment alleged that appellant killed Billie Jean Hart by shooting her with a gun. The proof supports the allegation. The sufficiency of the evidence is not challenged, but the facts will be summarized to better evaluate the grounds of error.

Billie Jean Hart had lived with appellant in what he called a common-law marriage even though he was married to another woman. At the time of the homicide Billie Jean was living in Odessa in a small house with her brother William Hart.

William Hart testified that at approximately two o'clock in the afternoon he was awakened by the horn of an automobile. He heard the door of the house open and

his sister Billie Jean go outside. He then heard the voices of his sister and another and then a gunshot. William Hart then ran to the door and saw Billie Jean lying in the snow and appellant sitting in his car with a pistol. Then he saw appellant walk toward and stand over her firing a shot into her head and say, "You stinking bitch." William hid when he saw appellant coming toward the house. Jones brought Billie Jean into the house, went outside and called out, "You can go call the law now, it is all over now, you can call the law, I am going to kill me some more of them son-of-a-bitches." Appellant was arrested sometime later at the office of his attorney.

Appellant testified and denied killing Billie Jean. He testified that he had lived with her off and on for over a year. He admitted that he had two prior felony convictions.

After the defense rested, Burnis Lincoln, an Odessa policeman was called. He testified that at about two o'clock he heard two shots. He hesitated for a while and then went to the door and saw appellant leave the house, get in his car and go south. Later he saw the body in the house.

Dr. David Dawson, a pathologist, testified that he performed an autopsy on the body of Billie Jean Hart and found two gunshot wounds, one entered the face and passed just on the right hand side of the nose through the facial bones and caused severe damage to the brain stem. The other wound was in the abdomen through the liver and the right kidney. Two bullets which appeared to be .38 caliber were found in the body. He was of the opinion that the wound to the head was the immediate cause of death.

The officers did not find the murder weapon.

Complaint is made in the seventh ground of error of the closing argument of the district attorney at the guilt stage of the trial.

Prior to this argument, counsel for the defense had stated to the jury concerning the district attorney: "You know the last time it came up, he said he didn't want a raise in salary, he wanted his salary." An objection stopped this line of argument. Counsel then criticized the State's witness William Hart as being a proven liar and criticized the State for calling Officer Lincoln after it had rested. His argument continued:

"If the District Attorney can come up here and try a case on some evidence and get convictions just because people don't like some things that go on, where are you going to be down the line?

"*  *  *

"I know it is easy to say, well, he is probably pretty sorry, he has been convicted of two felonies, he got convicted in 1967 of a felony, so that just automatically means you are supposed to convict him in this case, I am assuming that is what Mr. Green's [prosecutor] argument is primarily, that is the way I got it, I am sure that is the way you got it.

"*  *  *

"  .   .   . the accused has the right to counsel and has the right to a defense whether the District Attorneys like it or not.   .

"*  *  *

"Believe me, I mean it because you are the only thing that stands between just absolutely somebody over there deciding who they want to get and who they don't want to get.   .   .   ."

Appellant's counsel asserted that Officer Lincoln was fabricating his testimony and in effect that the prosecutor suborned perjury when he made the following argument:

"Another thing that doesn't make a lot of sense in the case, it doesn't make sense to me, it doesn't make sense to me that we try this case for a day and a half and

the State rests their case, rests their case and Tommy Lee Jones takes the witness stand and then, only after that, after he said that, after he testified then they come up with Lincoln, presumably Lincoln was available at all time, presumably those facts he testified to were just as material and just as relevant to you then as after he testified. They certainly would have been to me, but all of a sudden up comes a man who is a police officer, who claims to you that he heard a car pull up, coming by, and by the way from the north, not the south, not the direction of 700 Fitch, but from the north and sees Tommy Lee Jones get out of that car and he knows Tommy Lee Jones because Tommy Lee Jones is over there all the time. He said, first, he said, and you can read the record if you want to, he crawfished a little but I remember what he said, he said he saw him in the house and he said he saw him come out of the house, and you will all remember he said, I saw him come out of the house, that was before he got a good chance to look at the photographs that Mr. Green was so interested in getting up there to the witness stand while he was testifying, so he could remember that he couldn't see the door of that house from his house, so then he changed and said, he didn't see him come out, but still it is over two and a half hours before he says a word about it, he is watching television and he has heard two shots, he claims, and seen somebody come out of that house."

It was after this argument that the prosecutor countered that he could not be paid enough to try to convict an innocent man. The following occurred:

" . . . I tell you each and every one of you you are the citizens who pay me to do a job. I will tell you this, there is not one of you, not one of you on that Jury that can pay me enough money or can pay the police department enough money to try to convict an innocent man and that is what we are here about, and

that is what he is insinuating. You don't do that, my job is not that important to me. I can go over there and defend them and make more money—

"MR. SNEED: If it please the Court, that is totally outside the record.

"THE COURT: The objection is outside the record. There is no evidence how much money Mr. Green makes.

"MR. GREEN: So let me make this clear to each and every one of you, it is important, you don't pay me enough money to come here and convict an innocent man.

"MR. SNEED: We object to that remark, it is outside the record.

"MR. GREEN: Judge, it is in answer to him.

"THE COURT: I will overrule the objection. Go ahead."

This argument should not constitute reversible error. No new or harmful fact was injected into the case. There is no statement or indication that the prosecution had other evidence that it could not get before the jury nor is there any indication to the jury that he had other matters in mind when he made the statement.

Here the defense counsel commented about the district attorney's salary and that it was easy to stand behind the badge of authority. There is some insinuation that the district attorney was trying to show Officer Lincoln some photographs so that the witness would keep his testimony straight "so he could remember that he couldn't see the door of that house from his house, so he changed and said, he didn't see him come out . . . ." Further, defense counsel argued that the fact appellant had been convicted twice " . . . just automatically means you are supposed to convict him in this case" and that the jury was between " . . . somebody over there deciding who they want to get and who they don't want to get."

The argument made by the prosecutor was invited by defense counsel.

In Chapman v. State, 503 S.W.2d 237 (Tex.Cr.App.1974), the prosecutor argued:

"I would ask you to believe that I would not intentionally or knowingly be a party * * * to submitting perjured evidence before you."

This Court noted that it is ordinarily improper for a prosecutor to vouch for the credibility of witnesses during his argument. The Court noted that such argument was invited and was in reply to statements made by the defense counsel when he argued:

"(1) '* * * I submit to you, ladies and gentlemen, that the information Mr. Whaley (prosecutor) had when he started this case, was completely different than what came out from the witness stand.'

"(2) 'They (prosecutors) don't want to have a struggle inside the apartment, because that doesn't go along with whatever the story that you want to accept that the complainant has.'"

Judge Hawkins, in Vineyard v. State, 96 Tex.Cr.R. 401, 257 S.W. 548, 550 (1924), stated:

"We think the only safe rule to be that this court should not hold an argument to be reversible error unless it is in extreme cases where the language complained of is manifestly improper, harmful, and prejudicial, or where a mandatory provision of the statute is violated, or some new and harmful fact [has been] injected into the case."

Judge Davidson, in Allison v. State, Tex.Cr.App., 248 S.W.2d 147, wrote:

"Generally speaking, argument which does not violate a mandatory statute is not reversible error unless calculated to prejudice the rights of the accused. . . ."

See also Thompson v. State, 480 S.W.2d 624 (Tex.Cr.App.1972); Hoover v. State, 449 S.W.2d 60 (Tex.Cr.App.1970); Green v. State, 153 Tex.Cr.R. 442, 221 S.W.2d 612 (1949); Stovall v. State, 153 Tex.Cr. R. 495, 221 S.W.2d 278 (1949); Erisman's Manual of Reversible Errors, First Edition, Sections 512, 513; and 5 Tex.Jur.2d, Section 436, page 657.

Although the facts are different, the language in Sikes v. State, 500 S.W.2d 650 (Tex.Cr.App.1973), is applicable. It is:

". . . There is no statement or indication that the prosecutor had other evidence that he could not get before the jury nor is there any indication to the jury that he had other matters in mind when he made the statement.

"Such argument did not subvert the rule against the injection into the argument of the purely personal opinion of the prosecutor . . . ."

Appellant relies upon Fowler v. State, 500 S.W.2d 643 (Tex.Cr.App.1973). In that case the prosecutor argued: "I am certainly not going to prosecute a man that I don't feel in my own heart is guilty." The State contends that the present case is different from the Fowler case as follows:

". . . Unlike *Fowler*, the prosecutor here said he could not be paid enough to try to convict an *innocent* man. In *Fowler*, the prosecutor, in effect, came right out and told the jury that he was of the opinion that the accused was guilty. Here, the prosecutor was defending accusations made against him and the police by telling the jury, in effect, that he and the police do not 'frame' people in crimes and do not prosecute people that they *know* are *innocent*. . . ."

This case is distinguishable from the Fowler case even though the distinction is a fine one. The argument in the present case went further than what was properly invited. However, under the facts of this

case, this argument does not constitute reversible error.[1]

No reversible error being shown, the judgment is affirmed.[2]

ROBERTS, J., concurs in the result.

ODOM, Judge (concurring).

I concur in the results reached by the majority, but find their discussion of appellant's seventh ground of error unclear and confusing. The reasoning of the majority is that the argument complained of was invited, but I see no indication in the portions of argument quoted in the majority opinion that would invite the line of argument objected to by appellant. The only quoted argument of appellant remotely connected with that of which complaint is made is, "You know the last time it came up, he said he didn't want a raise in salary, he wanted his salary." Objection to this argument was sustained. But how can this statement on salary be said to invite the argument, "You don't pay me enough money to come here and convict an innocent man"? Would the argument, "The prosecutor doesn't like rainy weather," invite the response, "This rainy weather doesn't upset me enough to come here and convict an innocent man"? The other jury arguments by appellant's counsel quoted by the majority are even less connected to the argument of the prosecutor.

The improper argument of the prosecutor, however, I do not believe constituted reversible error. Although it carried the implication that the prosecutor believed appellant was not innocent, that was not the primary thrust of the argument. Had he dwelt upon the matter, so as to make the implication more obvious, or had he made a more direct statement of his opinion (see Fowler v. State, Tex.Cr.App., 500 S.W.2d

643), we would be confronted with a different situation. Compare Pringle v. State, Tex.Cr.App., 511 S.W.2d 35. Since, however, the improper implication was so attenuated, I do not believe reversible error has been shown, and concur in the results.

## DISSENTING OPINION ON APPELLANT'S MOTION TO REINSTATE APPEAL

MORRISON, Judge (dissenting).

I agree with my Brother Odom that the prosecutor's argument was not invited, but I cannot agree that Fowler v. State, supra, is distinguishable. It should be noted that in both *Fowler* and the case at bar the court overruled the appellant's objection to the argument, thereby conveying to the jury his opinion that the argument was proper.

I dissent to the affirmance of this conviction.

---

1. The majority of the Court does not agree, but the writer would overrule the Fowler case.

2. Eight other grounds of error are discussed in what is desginated Part II of this opinion.

It is not for publication. It contains no new questions of law. It is a matter of record but will not be cited or accepted as authority. See Footnote 2 in Thompson v. State, 514 S.W.2d 275 (Tex.Cr.App.1974).