NUMBER 13-01-519-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

MICHAEL IVISON                                                               Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.



 

 

                        On appeal from the 148th District Court

                                  of Nueces
County, Texas.

 

 



                                   O P I N I O N

 

          Before Chief Justice Valdez
and Justices Yañez and Castillo

                                  Opinion by
Justice Castillo

 

 

 








Appellant, Michael Ivison, appeals from his conviction for burglary of
a habitation with intent to commit theft,[1]
enhanced by a repeat felony paragraph.[2]  Appellant was sentenced by a jury to ten
years imprisonment. Appellant raises two issues: 1) the trial court abused its
discretion in allowing a witness to testify who was not on the witness list;
and 2) the trial court erred in overruling defense counsel=s objection to the
State=s improper jury
argument which inserted a personal opinion. 
We  affirm.  

FACTS








On March 12, 2000, at approximately 10:15 at night, Robert Rice,
Sheila Smith, and their three daughters, Tiffany, Amanda and Ashley, left their
home to attend a neighbor=s birthday party.  They returned at approximately 1:00 a.m.  When Amanda entered her room, she noticed
that things had been moved around and items destroyed.  She went to her mother and told her that
someone had been in the house.  Smith
called the police and the family began looking around to see if any items were
taken.  Nothing of value seemed to be
gone but various rooms in the house were in a state of disarray with drawers
opened, items moved and things scattered. 
Smith called the police a second time. 
Amanda, and a friend who was visiting her, walked into a back bathroom
and noticed the shower curtain closed. 
Amanda thought this was unusual and opened it.  Appellant was sitting in the bathtub.  When Amanda opened the curtain, he jumped out
and reached for the curtain, startling Amanda who ran screaming outside with
her friend, her younger sister, Ashley and a telephone.  Smith then looked in the bathroom, saw
appellant, turned and told her husband that someone was in the bathroom,
grabbed her daughter Tiffany, and ran outside where she called the police
again.  Rice rushed into the bathroom and
asked, AWhat the . . . are you
doing here?@ to which appellant
replied, AI was waiting on you.@  Rice grabbed appellant by the throat, pinned
him in the bathtub and held him until the police came.  Later the police found a pillow case in the
bathtub.  The pillow case contained some
lingerie and a dress belonging to Smith, clean and dirty undergarments
belonging to the girls, and a photo album of the girls when they were
infants.  

Rice and Smith both denied giving consent to appellant to enter their
home.  Rice said he had spoken to him
only once before this incident, for about thirty seconds regarding some wood
and a shower stall from a demolished trailer. 
According to Rice, appellant, while apparently under the influence of
some intoxicating substance at the time, accused Rice of taking appellant=s wood and Rice
explained he had bought the wood.  Rice
had wanted to buy the shower stall too, but appellant had already purchased
it.  This exchange had taken place about
a year before appellant had entered Rice=s home.   Smith denied knowing appellant before the
incident but stated that after his arrest, he attempted to approach her when
she was with her girls and would stare at her daughters.  She told him repeatedly to leave her and her
children alone.  She would not let him
speak on those occasions and so did not know if he was attempting to apologize.








Tiffany Rice had seen appellant
on one other occasion, some months prior to his entering her home.  On that prior occasion, she and her sister
Ashley asked two boys, Cody and Lonnie, if they could play football with them
and appellant and they did.  After they
finished, she and her sister were going to go into their house when appellant
asked Tiffany and Cody to go into his house to play a game.  Tiffany declined the invitation, saying that
her mother did not allow her to go into other people=s houses.

Ruth Hein lived next door to the Rice family and, on the night of the
offense sometime around nine o=clock, appellant had
come to her door and asked her if she knew the people next door and when they
would be home.  She told him that she did
not even know they were gone.  He told
her that he was going to go over and wait for them.  

Debra Shepherd was a friend of appellant=s girlfriend, Dora.  On the night of the incident, Dora had an
argument with appellant and called Shepherd at around 8:30 p.m., asking her to
come over because Dora thought appellant was Aon some drugs,@ but he denied it, and she wanted Shepherd=s opinion.  When Shepherd arrived, bringing her two
children with her, appellant, who was Avery hyper@ and appeared to have
been using drugs, went outside on the front porch with the children to play
with the dog.  Shepherd stayed inside
with Dora, who had been drinking.  Later
the children came back inside, without appellant, whom the children reported
had taken off walking down the street.








Appellant testified at trial and gave his version of events. According to him, on the night of the incident,
thinking his girlfriend  Dora would be
out late, he bought some methamphetamines and had used them.  When his girlfriend, who had never been
involved with drugs or the law, came home early and found him Ahigh@ on the drugs, she
began screaming at him.  He denied being Aon speed@ to her and so she
called Debra Shepherd to come and give her opinion. After Shepherd arrived,
appellant left and walked to the home of his neighbors, Robert Rice and Sheila
Smith.   Appellant explained that some
time before, he bought a shower stall from a contractor who was tearing a house
down; appellant planned to install the stall in his mother=s home where he
lived.   Rice had come by and said, AHey, I was going to
buy that shower.@ Appellant offered to
sell it to him and Rice said he did not have the money.  Appellant kept the shower stall but it sat
outside the garage for six months.  Dora
nagged him for several weeks to get rid of the stall because it was just
there.  The night of the incident,
because of Dora=s yelling and threats,
appellant decided to get out of the house and go to give the shower stall to
Rice.  Appellant stated that when he got
to the door, he saw lights and cars but no one answered and the door swung open
slightly.   He opened the door, yelled, AIs there anybody home?@ and when he got no
response, went to the next-door neighbor=s home and asked her
if she knew where Rice and his family were. 
The neighbor did not know when they were going to be home and so he told
her that he was going to wait for them.  








He then returned to Rice=s home and sat on the
porch for approximately five minutes. 
Getting thirsty, he decided to enter the house for a drink of
water.  At the time, he was still under
the influence of the methamphetamines. 
After his drink of water, he sat down in front of Rice=s television on his
knees because there was no remote control.  
After a while, he rummaged through a closet in another room, looked at
some records, and then went back to the television.  Eventually, tired of kneeling, he took a
pillowcase that was on some stacked laundry and filled it with some of the
folded clothes to create a makeshift pillow, without looking at what he was
putting in it.  Sometime later he went to
the bathroom, carrying the stuffed pillowcase with him.  He heard the people coming in, panicked, and
sat down on the pillowcase in the shower. 
He was discovered by a girl who ran out of the bathroom.  Rice then came in the bathroom and appellant
told him, AI=ve been waiting for
you,@ but the man tackled
him.  Appellant tried to explain about
the shower but Rice started choking him. 
Appellant pulled Rice=s arm off of him and
then the police arrived.  Appellant
testified that he told the police the whole story and signed a written
statement.[3]  

Appellant denied pulling out any drawers or going through the children=s bedrooms.  He denied having the intent to commit a theft
when he entered the Rice/Smith home and stated that he had tried numerous times
to apologize for staying in their home for four hours, violating their home,
and scaring their children. 

UNDISCLOSED WITNESS TESTIMONY








In appellant=s first issue on
appeal, he alleges that the trial court abused its discretion in allowing a
witness to testify who was not on the witness list.  Specifically, he claims the trial court erred
in allowing Tiffany Rice, the daughter of Robert Rice and Sheila Smith, to
testify of an extraneous incident in order to show appellant=s motive in entering
the home.   

Procedural History

On September 12, 2000, Appellant filed a motion for discovery which
requested that the trial court order the prosecutor to provide a list of all
witnesses which the State intended to call at trial. That request was granted.[4]  Apparently, the name of Tiffany Rice did not
appear on the list provided.[5]








On the first day of trial, July 11, 2001, the defense made a motion in
limine to exclude any evidence of extraneous acts of appellant related to child
molestation or perversion.  In response,
the State announced its intention to call one of the Rice children to testify
about a prior contact she had with appellant in which appellant  invited the child, and another child who had
been playing near his home, into the home for a drink in order to show
appellant=s motive for stealing
photographs and clothing of the children. 
Defense counsel objected that the proposed evidence was an extraneous
offense offered to show character and so governed by rule of evidence 404(b),
as well as rule 403.[6]  The trial court disagreed that the incident
was a Abad@ act and overruled
appellant=s objection, but
agreed that he would give defense counsel 
all the leeway he was entitled to in calling witnesses to rebut the Acharacter issue@  raised by the proposed evidence.  The State never revealed the name of the
witness at the hearing and appellant did not request it or any information
about the witness.   Shortly after this
discussion, the judge called the witnesses forward to be sworn in.  Among them was Tiffany Rice.  Defense counsel made no objection to  the swearing in of a witness who was not on
the witness list, nor does the record indicate that he commented in any way, to
the trial court or the prosecutor, about the swearing-in of Tiffany Rice as a
witness.

Later that day, prior to calling Tiffany, the prosecutor advised the
judge and defense counsel that he intended to call her, reminding both of the
issue discussed earlier about appellant inviting her into his home.  The prosecutor stated that he would be offering
the evidence in order to show motive and defense counsel argued that the State
was trying to bring in irrelevant, A404(b)@[7] events.  The trial judge responded that he believed
the defense had Aopened the door@ by questioning the
witnesses about the shower stall, to which the defense counsel answered, AOh, yes sir. I see
what you mean.@

After the State reiterated that it was offering the testimony as
evidence for appellant=s motive for entering
the home in order to prove the required element of intent to commit theft, and
noted that some of the items gathered by appellant were photographs and
clothing of Tiffany, the judge ruled that he would allow the testimony.

Defense counsel then asserted: 








Well, Your Honor, on another matter in this regard, I have had no
notice up until now that Tiffany Rice was going to be a witness. We have a
discovery order signed in this case that they are to produce witnesses to
me.  I have no notice that Tiffany Rice
is going to be a witness. . . So I would object for failure to disclose.

 

The prosecutor then argued he had not known what the defense was going
to be and now had to address what had been brought up about the shower.  The prosecutor claimed he had not known that
appellant was going to question the proof of the element of intent to commit
theft and so now the State needed to bring a witness to rebut appellant=s claims.  Defense counsel disagreed with the prosecutor=s assertion that the
State had no notice of the defense, explaining that he told the State from the
beginning what appellant=s defense was.  The judge then asked the prosecutor why he
had not stated Tiffany as a potential witness since he knew about her Asince day one.@  The prosecutor responded that he did not know
Asince day one@ about her[8]
and again denied knowing what the defense was, at least as to the specifics of
the shower.  Defense counsel stated that
he did not know what Tiffany was going to testify about but it had nothing to
do with the burglary and was simply an attempt by the State to paint appellant
as a Apervert.@  








The court stated he would allow the testimony and would overrule
appellant=s objection.  Defense counsel asked the court for
clarification, asking if the judge was overruling his objection regarding
discovery and asking the witness to be excluded as a sanction for the failure
to disclose.  The judge replied that if
the prosecutor did not know the testimony of the witness until the day before
or that day, he had no obligation to disclose it to the defense.  Defense counsel responded, AOkay, judge.@  The trial court went on to note that the
State did have the duty to disclose now the substance of the witness=s  testimony. 
The prosecutor responded that he had done so in the morning when he
talked about the prior contact with appellant by the child. The judge then  overruled the defense objections.  Defense counsel responded, 

I=m gonna claim
prejudice, and I am gonna claim lack of notice and I=m gonna ask for a
continuance to prepare other witnesses to rebut what this young lady is gonna
come in and say about my client, because my - - I got witnesses that is [sic]
standing out in the hallway saying, I=ve seen this man with
the children, all around the neighborhood, and he never gone [sic]
nothing.  He=s been B He can baby sit my
kids anytime, I have young children, and nothing. So they are trying to throw a
red herring in this case - -  

 

The judge responded, AI am here, and I=m listening . . . I am
not trying to prevent you from defending your client. If you feel you must ask
for a continuance, you do so, you know? . . . I am not preventing you from
doing anything that you need to do to properly defendant [sic] your
client.  But first let=s see what this young
lady is going to say.@








Defense counsel then responded, APerhaps we can get her
in here and I can have a 404(b) hearing on this, because this is a 404(b)
issue.@  The trial court denied the request,
explaining that if there was a crime, he would allow a 404(b) hearing, but
accepted the State=s argument that 404(b)
did not apply because appellant=s inviting  Tiffany into his home was not a crime.  Defense counsel then asked if the trial court
would allow the witness to first testify outside the presence of the jury, and
the judge said, AOkay, I=ll allow it.  Bring in the child.  Sure. 
No problem.@

A hearing then took place, outside the jury=s presence, in which
the State questioned Tiffany as to the evidence she would offer[9]
and defense counsel cross-examined her. 
After the direct and cross-examination were complete, the trial court
asked defense counsel if he had anything else before the jury came in.  Counsel reurged his relevancy and 404(b)
objections.  Counsel made no reference to
his discovery objections, did not reurge his request that the witness be
excluded, and did not ask for a recess or continuance.








The trial then continued and Tiffany testified. After the testimony of
one more State=s witness, and three
defense witnesses,[10]
defense counsel requested a continuance Afor the rest of the
afternoon@[11] because appellant was
to be the next witness.  When the judge
responded ASo?,@ defense counsel
stated that he needed time, because of the surprise testimony of Tiffany Rice,
to go to the neighborhood and talk to some children and find out facts about
appellant=s activity with
children, specifically the children named in her testimony to find out if he
did ask her into the house.  Counsel
noted that he had been prejudiced and surprised because he did not know about
the witness and was asking only for a short continuance of an hour.  The judge stated that he had the right to
rebuttal witnesses and, after a short discussion, granted the request by
recessing the case until 9:00 a.m. the next day. 

Standard of Review

The standard of review for analyzing whether the trial court erred in
allowing a witness who was not on a requested witness list to testify is abuse
of discretion.  Hightower v. State,
629 S.W.2d 920, 925 (Tex. Crim. App. 1981). 
An abuse of discretion occurs when the trial court=s actions are
unreasonable and arbitrary, without reference to any guiding rules or
principles.  Lyles v. State, 850
S.W.2d 497, 502 (Tex. Crim. App. 1993). 
So long as the trial court=s holding was within
the zone of reasonable disagreement, the reviewing court should affirm.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990).

Analysis

Because of the discovery order signed in this case, all witnesses that
were expected to testify at any stage of the trial should have been
disclosed.  See Hightower v. State,
629 S.W.2d 920, 925 (Tex. Crim. App. 1981); Young v. State, 547 S.W.2d
23, 27 (Tex. Crim. App. 1977).  In
determining whether there has been an abuse of discretion in allowing a witness
whose name does not appear on the State=s witness list to
testify, we consider: 1) whether the prosecutor acted in bad faith; and 2)
whether the defendant should have reasonably anticipated the witness=s testimony.  Wood v. State, 18 S.W.3d 642, 649
(Tex. Crim. App. 2000); Martinez v. State, 867 S.W.2d 30, 39 (Tex. Crim.
App. 1993).  








However, in the present case, we do not reach the question of whether
the prosecutor acted in bad faith[12]
or whether the defendant should have reasonably anticipated the witness=s testimony[13]
as we find that any claimed error was Amade harmless.@  Barnes v. State, 876 S.W.2d 316, 328
(Tex. Crim. App. 1994). 








The record reflects that, prior to Tiffany=s questioning outside
of the presence of the jury, defense counsel made an objection as to lack of
notice and failure to disclose.  The
trial court overruled the objection. 
Defense counsel then indicated that he would ask for a continuance, but
did not actually do so.  Instead, at
counsel=s request, the witness
was questioned outside of the presence of the jury.  Following this questioning, appellant did not
re-urge his objection as to lack of notice.[14]  Nor did he indicate he needed more time, ask
for a continuance, or ask for a recess. 
Had appellant needed more time to interview the witness at length
outside of the courtroom, speak to other witnesses about this testimony, or in
any other way investigate the claim the witness 
was making in order to be better prepared for cross-examination, he
could have asked for a recess or a continuance prior to her testimony.[15]  AHaving failed to do so,
he >cannot now be heard to
complain=@ of the lack of
notice.  Id. (citing Hubbard v.
State, 496 S.W.2d 924, 926 (Tex. Crim. App. 1973)).  

Moreover, the trial court made efforts to remedy any harm that the
appellant claimed he suffered due to the lack of notice.  The trial court invited appellant to ask for
a continuance; indicated it would allow appellant to put on any rebuttal
evidence he needed; granted appellant the opportunity to question the witness
outside of the presence of the jury; and granted the sole (one-hour)
continuance that the defense requested.  See
Pinkerton v. State, 660 S.W.2d 58, 64-65 (Tex. Crim. App. 1983)(reviewing
court considered trial court=s Astrenuous efforts@ to insure appellant
not unfairly harmed by lack of notice of witness in determining whether abuse
of discretion occurred.) 

We overrule appellant=s first issue.








Improper Jury Argument

Appellant=s second issue alleges
that the trial court erred in overruling the appellant=s objection to an
improper jury argument by the State.  

During the closing arguments, in the State=s Aopening@ argument, the State
noted that the one contested element was that of intent to commit theft when
appellant entered the habitation.  The
prosecutor stated he did not know how the defense intended to argue that issue but
argued that, even if the jury believed appellant=s testimony that he had entered the home because
he was thirsty, that was still sufficient evidence to prove intent to commit a
theft because the water did not belong to him.  The prosecutor began to say that there was
evidence to argue that appellant intended to steal more than the water but
opted to reserve further discussion of that until his closing argument.








During  defense argument,
defense counsel stated that the crux of the case was the question of defendant=s intent in entering
the home B whether appellant
entered with the intent to commit a theft B and argued that
although appellant admitted drinking some water, he had not entered with the
intent to steal the water. 
Counsel then asserted that such an argument by the State was like the
State saying it did not have enough evidence to convict him of stealing
anything, but it could show he drank some water.  Counsel concluded that the State was Aoverreaching@ and he
anticipated  the State would say that if
the jury wanted to find appellant guilty of burglary, the jury would be able to
do so, because appellant admitted to drinking water.  Counsel emphasized that the jury had to
consider appellant=s intent to commit a
theft at the time he entered the home and the jury could not simply convict on
the Atechnicality@ that appellant had
admitted to drinking some water in the home.

In its final closing argument, the State=s attorney stated, AI wanna first point out that I absolutely do not
believe Mr. Ivison went in that home to get a drink, to commit a theft of
water, but I only argue to you that B.A  At that point, defense counsel objected to
the comment as being improper jury argument as it expressed an opinion on the
credibility of the witness.  The
objection was overruled and the trial court instructed the jury, AThis is - - this is
not evidence by the way. Whatever both of the attorneys tell you is not
evidence.@  The prosecutor concluded  his thought with, AI just argue to you,
even if, for some reason, you believe the defendant=s testimony, he=s guilty of burglary
of a habitation.@  Appellant complains of the State=s remarks, AI wanna first point
out that I absolutely do not believe Mr. Ivison went in that home to get a
drink, to commit a theft of water, but I only argue to you that B.A

Standards for Review








It is well-established that proper jury argument is limited to: 1)
summation of the evidence; 2) reasonable deduction from the evidence; 3)
answers to argument of opposing counsel; or 4) a plea for law enforcement.  Melton v. State, 713 S.W.2d 107, 114
(Tex. Crim. App. 1986); Flores v. State, 778 S.W.2d 526, 528 (Tex. App.BCorpus Christi 1989,
no writ).  However, even when arguments
exceed the boundaries of these permissible areas, jury argument will not
constitute reversible error, unless the arguments are manifestly improper,
violative of a mandatory statute, or inject new, harmful facts into the case.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000).  Furthermore, the
remarks must have been a willful, calculated attempt by the  State to deprive a defendant of a fair
trial.  Id.  In most cases, an instruction to disregard
will cure the error.  Id.

In reviewing a challenge to jury argument, the reviewing court looks
at the context in which the challenged remarks appear. Jackson v. State,
17 S.W.3d 664, 675 (Tex. Crim. App. 2001); Gaddis v. State, 753 S.W.2d
396, 398 (Tex. Crim. App. 1988).  A
complained-of remark must be considered in the light of the entire argument,
not as an isolated sentence taken out of context.  Drew v. State, 743 S.W.2d 207, 220
(Tex. Crim. App. 1987).  If a remark
falls outside the bounds of proper jury argument, and constitutes reversible
error by being manifestly improper, violative of a mandatory statute, or by
injecting new, harmful facts into the case, the reviewing court must then
determine whether such error was harmful. 
See Wilson v. State, 938 S.W.2d 57, 60-61 (Tex.
1996)(determining that prosecutor=s remarks were outside
the record, manifestly improper, and prejudicial, and then conducting a harm
analysis.)








The court of criminal appeals has suggested that most improper jury
arguments are not constitutional errors, but fall instead under Texas Rule of
Appellate Procedure 44.2(b).  Martinez
v.State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2001)(commenting on holding in
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).  Improper prosecutorial comments are
non-constitutional errors and so reviewed under rule 44.2(b).  Reed v. State, 991 S.W.2d 354, 364 (Tex.
App.BCorpus Christi 1999,
pet. ref=d).  Under that standard, unless an error affects
substantial rights, it must be disregarded. 
Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error has a substantial and injurious effect or influence in determining the
jury=s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  Conversely, substantial
rights are not affected  if, after
reviewing the record as a whole, the reviewing court has fair assurance that
the error did not influence the jury, or had only a slight effect.  Motilla v. State, No. 598-01, 2002
Tex. Crim. App. LEXIS 137 at *6 (Tex. Crim. App. June 26, 2002).  In reviewing the effect of the error upon the
jury=s decision, the
appellate court should consider everything in the record, including the
presence of overwhelming evidence of guilt. 
Id. at *12. 

In improper argument cases, a determination of harm under the rule
44.2(b) standard involves balancing the following factors:  1) severity of the misconduct (the magnitude
of the prejudicial effect of the prosecutor=s remarks); 2) measures adopted to cure the
misconduct (the efficacy of any cautionary instruction by the judges); and 3)
the certainty of conviction absent the misconduct (the strength of the evidence
supporting the conviction).  Martinez,
17 S.W.3d at 692-93; Mosley, 983 S.W.2d at 259.

Accordingly, in the present case we will determine: 1) whether the
challenged remark fell within the bounds of jury argument; 2) if not, whether
it was manifestly improper or injected new, harmful facts into the case; and if
so, whether 3) it was harmful.  Wilson,
938 S.W.2d at 60-61.

Analysis








The general rule is that it is improper for a prosecutor to
inject  personal opinions into his
statements to the jury.  Johnson v.
State, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985).  This is because it is improper for a
prosecutor to infer that he has some special expertise or knowledge above that
of the jury and impliedly invite the jury to rely on that expertise or knowledge
in determining a contested fact issue, like the credibility of a witness.  Id.; Buffington v. State, 801
S.W.2d 151, 157 (Tex. App.BSan Antonio 1990, pet.
ref=d).  It is the province of the jury, not the
prosecutor, to determine the credibility of witnesses.  Vasquez v. State, 819 S.W.2d 932, 936
(Tex. App.BCorpus Christi 1991,
pet. ref=d). 

However, a prosecutor is permitted to argue his opinion about a case
to the jury  so long as it is based on
the evidence in the record and does not constitute unsworn testimony.  McKay v. State, 707 S.W.2d 23, 37
(Tex. Crim. App. 1985)(argument AYou tell me, did not
that boot make that print? If not, why not? Looks like it to me.@ was a reasonable
deduction from the evidence); Ramos v. State, 419 S.W.2d 359, 368 (Tex.
Crim. App. 1967)(argument ANow if you do not
think that man was intoxicated, you go back there and say not guilty and I
would have to say you were the stupidest - - A was the prosecutor=s opinion of the evidence and not unsworn
testimony).  This includes a prosecutor=s opinion about the
credibility of a witness, even if that witness is the defendant.  Barnes v. State, 70 S.W.3d 294, 308-09
(Tex. App.BFort Worth 2002, pet.
ref=d).                             .








 The State argues that the
remarks were made solely in response to defense counsel=s argument that the
State would be attempting to overreach and ask the jury to find appellant
guilty because of the theft of the water as well as the implication that the
State could not prove any theft other than that of the water.  The record supports this view of the
argument.  We find that the remarks were
made in response to defendant=s arguments and did
not exceed the bounds of the invitation.[16]  See Lewis v. State, 676 S.W.2d 136,
142-43 (Tex. Crim. App. 1975)(where defense argued A[the State] knows that
its case stinks to high heaven and they don=t want to search for the truth here,@ the State=s response that a
prosecutor had a duty to seek justice, was not improper); Stone v. State,
583 S.W.2d 410, 416-17 (Tex. Crim. App. 1979)(where defense questioned why
State had not called certain witnesses, it was not improper argument for the
prosecutor to respond that she had not called them because she did not believe
them); Jones v. State, 520 S.W.2d 755, 757 (Tex. Crim. App. 1975)(when
defense referred to district attorney=s salary in closing
arguments and suggested that the prosecutor suborned perjury, prosecutor=s responding argument
that no one could pay him enough money to convict an innocent man was not
improper.) 








Furthermore, the State argues, and we agree, that while the prosecutor
did indicate his own personal opinion, he did not suggest any special knowledge
or expertise or imply that the jury should rely on his opinion.  See Johnson v. State, 698 S.W.2d
at167. Indeed, the prosecutor acknowledged the jury=s responsibility to
determine the credibility of appellant, albeit in a fashion that indicated his
doubt as to that credibility.  We do not
find the remarks improper.  Buffington,
801 S.W.2d at 157 (prosecutor=s statement that he Abelieved in what he
did@ and Ain justice@ was not improper
because prosecutor did not imply to the jury that they should rely on facts
known to him and not to them).  Moreover,
even if the remarks did not fall within the limits of proper argument, and even
if they could be considered manifestly improper or to have injected new and
harmful facts before the jury and so be reversible error, analyzing the remarks
under the Mosely factors, viewing them in the context of the entire
trial and all the evidence presented as to guilt, these passing remarks, which
were immediately followed by an instruction to the jury by the judge that the
remarks were Anot evidence,@ were not
harmful.  Mosley,  983 S.W.2d at 259 (setting out factors for
analysis of harm).

We overrule appellant=s second issue.

CONCLUSION

Having overruled both of appellant=s issues on appeal, we affirm the judgment
conviction.      

 

ERRLINDA
CASTILLO

Justice

 

Do not
publish.

Tex.
R. App. P.
47.3(b).

 

Opinion delivered and
filed

this 30th day of
August, 2002.











[1]
Tex. Pen. Code Ann. '
30.02(a)(1)(Vernon Supp.2002).





[2]
Tex. Pen. Code Ann. '
12.42(b) (Vernon 1994). 





[3]
The police testified that no written statement was taken.





[4]
The order granting the request stated that the discovery was to be provided no
later than October 19, 2000; however, the order itself was not signed until
November 6, 2000.





[5]
No copy of the list appears in the record but the State does not contest
appellant=s assertion
that this name was not on the witness list.





[6]
Tex. R. Evid. 403, 404(b).





[7]  Tex.
R. Evid. 404(b).





[8]
The prosecutor did not state when he came to know about the potential testimony
or when he determined Tiffany was going to be a potential witness, and neither
the defense nor the judge ever queried the prosecutor as to this fact. 





[9]
Her testimony at this hearing was substantially similar to that offered at
trial and detailed previously in this opinion. 





[10]
One of the witnesses was a detective that had earlier testified for the State
but was recalled by the defense.





[11]
It was then 4:00 p.m.





[12]
A finding of bad faith, moreover, would be problematic as the record in this
case was not sufficiently developed for us to determine when the prosecutor
became aware of Tiffany=s testimony or
that she would be a witness in the case and therefore we do not know how long
the delay was between the State=s
determination that she would be a witness at trial and its notification to
appellant of the same, much less whether that delay, if any, was unreasonable
or indicated an intent to deceive. 
Absent a clear showing of bad faith demonstrating that the State
willfully failed to timely supply notice of a witness, we will not find that a
trial court abused its discretion in failing to exclude the witness=s
testimony.  See Hardin v. State,
20 S.W.3d 84, 89-90 (Tex. App.BTexarkana
2000, pet. ref=d); Pena v.
State, 864 S.W.2d 147, 149 (Tex. App.BWaco
1993, no pet.). 





[13] We
note, however, that Tiffany Rice was a family member present at the time of the
discovery of the burglary and so the defense might have reasonably anticipated
that she might be called.  See Baker
v. State, 797 S.W.2d 406, 409 (Tex. App.BFort
Worth 1990, pet. ref=d)(where
officer=s name appeared
in offense report, defendant could have reasonably expected officer to be
called).  Furthermore, the record
reflects some defense expectation of, or at least lack of surprise about,
Tiffany appearing as a witness when counsel failed to claim lack of notice at
the time of the hearing prior to trial or at the time of Tiffany=s
swearing-in.  Appellant=s
emphasis throughout the record was not on his claimed lack of notice, which he
raised once but did not pursue, but on his repeated and consistent 404(b)
objections to her testimony.

As to the 404(b) objection, we observe that the State was
incorrect in its assertion to the trial court that conduct must be a bad act or
misconduct in order for rule 404(b) to apply. 
Bishop v. State, 869 S.W.2d 342, 345 (Tex. Crim. App. 1993).  However, the question of whether the trial
court was incorrect in overruling defense counsel=s
rule 404(b) objections to this testimony is not before us in this appeal.   





[14]
As previously noted, the only objections raised after hearing her testimony
were to as rule 404(b) and relevancy.





[15]
The sole request for continuance occurred after the defense had put on all of
its witnesses except appellant.  The
defense requested a continuance of an hour, which the trial court granted.  





[16]
A prosecutor may answer jury arguments by the defense as long as the response
does not exceed the scope of the invitation. 
Andujo v. State, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988).