

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. PD-1584-11 & 1585-11

### MAURICIO CELIS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS NUECES COUNTY

COCHRAN, J., filed a concurring opinion, which WOMACK, and JOHNSON, JJ., joined.

### O P I N I O N

I agree that the offense of falsely holding oneself out as a lawyer contains only one culpable mental state, the intent to obtain an economic benefit.[1] I also agree that the trial judge did not err by instructing the jury on the definition of "foreign legal consultant." But

---

[1] TEX. PENAL CODE § 38.122(a) ("A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.").

I do, however, respectfully disagree with the plurality that appellant "was not entitled to an instruction on a mistake-of-fact defense because his requested instruction did not negate the culpability required for the offense."[2] If appellant had offered evidence that he reasonably, but mistakenly, believed that he was authorized to practice law in Texas, he would have been entitled to a mistake-of-fact instruction because that mistaken belief would negate the kind of culpability required for the offense.[3]

I believe that the plurality mistakenly equates the phrase "negates the kind of culpability required for the offense" with the phrase "negates the culpable mental state." The Legislature knew the difference between those two concepts and carefully chose its phrasing in defining the mistake-of-fact defense in the 1974 Penal Code.[4] We should not rewrite the words of the statute to eviscerate the defense of mistake of fact. But because appellant failed to offer evidence to support each aspect of his mistake-of-fact defense, I agree that the trial judge properly denied a jury instruction on that defense. I concur in the judgment.

---

[2] Plurality op. at 1-2.

[3] *See* TEX. PENAL CODE § 8.02(a) ("It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.").

[4] The term "culpability" is broader than the term "culpable mental state" and refers to the general "blameworthiness" or "guilt" of the actor. *See Evans v. Michigan*, ___ U.S. __, 133 S.Ct. 1069, 1077 (2013) (distinguishing between "elements" of an offense and criminal culpability; "Culpability (i.e. the 'ultimate question of guilt or innocence') is the touchstone" for purposes of an acquittal); *United States v. Scott*. 437 U.S. 82, 98 (1978) (distinguishing between judicial determinations that go to "the criminal defendant's lack of culpability" and relate to "the ultimate question of guilt or innocence" and those that deal with procedural error); BLACK'S LAW DICTIONARY 406 ("culpability" is "Blameworthiness; the quality of being culpable"; second definition refers to Model Penal Code § 2.02); WEBSTER'S UNABRIDGED DICTIONARY 443 (2d ed.) ("culpability" means "blamableness; liability to blame").

I.

Appellant was charged with 23 counts of falsely holding himself out as a lawyer. The evidence at trial showed that appellant was an investigator for a personal-injury attorney in Corpus Christi. After having expressed his desire to become a lawyer for several years, he hung a framed "license" on his office wall one day in 2000. Appellant claimed to have received his "license" after graduating from Universidad Regiomontana in Monterrey, Mexico, in 1999. This was while he was working full-time as an investigator in Corpus Christi.[5] In 2001, appellant left his investigator job and joined the law firm of Owen & Associates. That firm specialized in recruiting personal-injury clients and referring them to other lawyers for a percentage of the attorney's fees. While he worked at that firm, appellant made numerous representations to clients, office staff, and other attorneys that he was an attorney licensed to practice law in Mexico.

In 2005, appellant formed CGT Law Group International[6] and he repeatedly claimed to be a licensed attorney in Mexico.[7] During a civil lawsuit to recover attorney's fees in

---

[5] Gabriel Cavazos, a law-school professor in Monterrey, testified that it would be impossible to work full time in Corpus Christi and simultaneously obtain a law degree in Mexico.

[6] "CGT" stands for Celis, Gwyther, and Talapia, the three people who formed the partnership.

[7] For example, appellant's CGT business cards stated that he was an attorney licensed in Mexico, as did the Owen & Associates business cards. The website for CGT noted, in appellant's biographical section, that he was a licensed attorney in Mexico. Appellant told various clients, including Paloma Steele, that he was a licensed attorney in Mexico. In the CGT professional-liability insurance application, appellant stated that he was licensed in Mexico, admitted to the bar in 2000, and was a member in good standing with the Mexican Bar

Zapata County, appellant admitted that he did not have a license or "cedula" to practice law in Mexico. He was unable to produce documentation of any law license or law degree.

The evidence at trial showed that appellant was not a lawyer, had never been a lawyer in either Mexico or the United States, had not attended law school, and was not licensed as a lawyer in either Mexico or the United States. Appellant's civil-lawsuit testimony established that appellant did not have a United States law license or a Mexican "cedula,"[8] but appellant stated that "I'm considered a lawyer in Mexico" because he has a diploma in "judicial sciences"[9] even though it has never been registered with the Ministry of Education, which is a prerequisite for obtaining a "cedula" to practice law.[10] It was undisputed that appellant was not in good standing with either the Texas State Bar or the Mexican licensing authority. The evidence also showed that, during 2006 alone, appellant received over $1.3

Association.

[8] According to trial testimony, the Texas Board of Law Examiners requires attorneys from Mexico to produce (1) a "cedula" as evidence of that person's ability to practice law in Mexico, and (2) a certificate from Mexico's Ministry of Education stating that the person is currently meeting the requirements to be an attorney in Mexico. Appellant never produced either of these documents. Even with those documents, a person could only advise clients about the laws of Mexico as a "foreign legal consultant"; he could not practice personal-injury law in Texas.

[9] Despite promises to do so, appellant never produced any diploma or other certificate stating that he had completed a course of legal study at the Universidad Regiomontana.

[10] Appellant called two witnesses to testify about requirements to practice law in Mexico. One of them, an attorney in appellant's law firm, said that it is not necessary to go to law school or obtain a law license to practice law in Mexico. "Anybody who goes and wants to practice in the four areas of amparo, employment law, agrarian law, and criminal law can do that. Anybody here can do that. And they can go to Mexico and do that." When the prosecutor asked the witness if "every single Mexican citizen is licensed to practice law?" the witness responded, "As long as they're not liars and they're not mentally incompetent."

million in attorney's fees while at Owens & Associates.

The jury convicted appellant of fourteen counts of falsely holding himself out as a lawyer and sentenced him to ten years' probation and a $10,000 fine on each count.

The court of appeals rejected appellant's eighteen points of error, including three issues related to the jury charge, and affirmed the trial court's judgment.[11]  The court of appeals rejected appellant's claim that he was entitled to an instruction on mistake of law because

> [a]ppellant's alleged belief that he was licensed to practice law in Mexico and in good standing with the licensing authority in Mexico does not negate the culpable mental state to commit the offense. Therefore, appellant was not entitled to a mistake of fact instruction regarding his belief that he was licensed to practice law in Mexico and in good standing with the licensing authority in Mexico.[12]

According to that court, a person who has taken all reasonable steps to ensure compliance with the legal attorney-licensing requirements and who reasonably believes that he is authorized to practice law in Texas is nonetheless subject to significant criminal punishment even though his mistaken belief negates the kind of culpability required for the offense and he is morally blameless.  This cannot be.  And it is not a correct interpretation of the law.

II.

A.    **The Origins of the Mistake-of-Fact Defense.**

The history of the Texas mistake-of-fact provision was summarized by Presiding

---

[11] *Celis v. State*, 354 S.W.3d 7 (Tex. App.–Corpus Christi 2011).

[12] *Id.* at 29.

Judge Keller in *Thompson v. State*.[13]  She noted that, before enactment of the 1974 Code, the

mistake-of-fact defense was codified in Article 41 of the 1948 Penal Code.  That provision

read as follows:

> If a person laboring under a mistake as to a particular fact shall do an act
> which would otherwise be criminal he is guilty of no offense, but the mistake
> of fact which will excuse must be such that the person so acting under a
> mistake would have been excusable had his conjecture as to the fact been
> correct, and it must also be such a mistake as does not arise from a want of
> proper care on the part of the person so acting.[14]

This statute (or its predecessor, Article 45[15]) defined and governed the mistake-of-fact

defense in Texas for almost 100 years.  The statutory defense applied to virtually all offenses

and could be applied to any "particular fact" if a mistake about that fact would excuse the

actor "had his conjecture as to the fact been correct[.]"  It was applicable to a wide variety

of facts that included the following

> • Whether the defendant reasonably believed that the timber he "carried away"
> belonged to Mr. X who authorized the defendant to take it, or Mr. Y who

---

[13] 236 S.W.3d 787, 793-800 (Tex. Crim. App. 2007).

[14] TEX. PENAL CODE art. 41 (1948).

[15] In 1882, Articles 45 & 46 of the Texas Penal Code read as follows:

Art. 45. No mistake of law excuses one committing an offense; but if a person
laboring under a mistake as to a particular fact shall do an act which would
otherwise be criminal, he is guilty of no offense.
Art. 46. The mistake as to fact which will excuse, under the preceding article,

must be such that the person so acting under a mistake would have been excusable
had his conjecture as to the fact been correct; and it must also be such mistake as
does not arise from a want of proper care on the part of the person committing the
offense.

claimed ownership of the land on which the timber had grown;[16]

- Whether the defendant reasonably believed that he did not know it was an election day in a prosecution for keeping his saloon open on election day;[17]

- Whether the defendant, on trial for bigamy, reasonably believed that his first wife was dead before he married his second wife;[18]

- Whether the defendant, on trial for kidnapping and abducting a female minor for the purpose of prostitution, reasonably believed that the girl was over 17 and went with him voluntarily;[19]

- Whether the defendant, in a negligent homicide prosecution, reasonably believed that "he had taken the cartridges from the gun, as was always his custom under such circumstances";[20]

- Whether the defendant reasonably believed that the liquor that he sold was not intoxicating;[21]

- Whether the defendant reasonably believed that the scales he used to weigh cotton were accurate rather than being a false weighing device;[22]

- Whether defendant, charged with violating the Pure Food Law by selling adulterated food, reasonably believed that the cans he had for sale were not in

---

[16] *Lackey v. State*, 14 Tex. App. 164, *1 (Tex. App. 1883); *see also Donahoe v. State*, 23 Tex. App. 457, 458 (Tex. App. 1887) (taking property belonging to another under a mistaken belief that it belongs to a third person, who has authorized the taker to remove similar property belonging to him, is not theft).

[17] *Hailes v. State*, 15 Tex. App. 93, *1 (Tex. App. 1883).

[18] *Watson v. State*, 13 Tex. App. 76, *4 (Tex. App. 1882).

[19] *Mason v. State*, 14 S.W. 71, 71 (Tex. App. 1890).

[20] *McCray v. State*, 140 S.W. 442, 443 (Tex. Crim. App. 1911).

[21] *Joyce v. State*, 120 S.W. 453, 455 (Tex. Crim. App. 1909).

[22] *Smith v. State*, 121 S.W.2d 347, 347-48 (Tex. Crim. App. 1938).

a bad condition;[23] and

• Whether the defendant meat seller reasonably believed that the meat he sold did not contain forbidden sulphites.[24]

There were two distinct situations in which no instruction on a reasonable mistake of fact instruction was given to the jury: (1) when the mistake went to the felonious intent–the culpable mental state; in that situation *any* honest mistake, even a stupid one, was sufficient to exonerate the defendant;[25] and (2) when the defendant was charged with statutory rape;

---

[23] *Keeton v. State*, 151 S.W.2d 819 (Tex. Crim. App. 1933).

[24] *Neill v. State*, 225 S.W.2d 829, 830 (Tex. Crim. App. 1950) ("Under the express provisions of Art. 709, P.C., the sale of an article of food containing sulphite is made unlawful. Neither knowledge nor intent is a part of that offense. Lack of knowledge on the part of the accused that the article of food contained sulphite arises only as a matter of defense under the general statute relating to the defense of mistake of fact.").

[25] *Neeley v. State*, 8 Tex. App. 64, *1-2 (Tex. App. 1880) (quoting the Texas Supreme Court's discussion in *Bray v. State*, 41 Tex. 204 (Tex. 1867), to the effect that the statutory provisions of mistake of fact and its "want of proper care" limitation applies only "to acts 'otherwise criminal,' or acts in themselves criminal if unexcused, and not to acts which become criminal only when committed with a fraudulent or felonious intent"; jury instructions that required a finding of "proper care" when defendant claimed that he had a "good faith" belief that the cow he killed he had bought from Mr. X, when, in fact, it belong to Mr. Y); *see also Brown v. State*, 43 Tex. 478, *2 (Tex. 1875), a case in which the defendant was convicted of falsely holding himself out as a notary public, in which the Texas Supreme court explained,

> It was not the intention of the law to punish one who honestly believed himself entitled to the office in which he assumed to act. The language of the statute, "falsely assume or pretend," implies a guilty knowledge. The ordinary test of criminality is the criminal intent or guilty knowledge; and in this case we think the statute makes such intent or knowledge an essential constituent of the offense. The provisions of the code as to mistake do not apply to offenses of this character. (*See Buck Bray v. The State*, 41 Tex., 203.).

*Id.* at *2 (some citations omitted).  Thus, if the statute required an intentional or knowing mental state concerning the element about which the defendant was mistaken, any mistake, not merely a reasonable mistake, negated that culpable mental state and exculpated the defendant.

in that situation, Texas, like the majority of states, concluded that even a reasonable mistake

about the minor's age would not exculpate a defendant because an underage girl was legally

incapable of consenting to an intimate act.[26]

In *Thompson*, we made "three important observations" about this statutory defense:

- "First, the mistake did not have to negate the culpable mental state required for the offense; all that had to be shown was that no offense would have been committed if the mistaken belief had been correct."[27] Thus, the mistaken fact merely had to negate the general culpability or blameworthiness of the conduct, and the mistake could relate to any element of the offense.

- "Second, the defense contained a requirement that the mistake 'not arise from a want of proper care,' which is roughly equivalent to the current statutory requirement that the defendant's mistaken belief be 'reasonable.'"[28] Then, as now, the jury generally decided whether a given mistake was "reasonable" or "did not arise from a want of proper care."[29]

---

[26] *Robertson v. State*,102  S.W. 1130, 1131 (Tex. Crim. App. 1907) ("Under the decisions in this state, a person accused of rape on a girl under 15 years of age cannot justify his act by proof that he believed the girl was over 15 years of age. The decisions in Texas are uniform on this proposition."); *see generally United States v. Ransom*, 942 F.2d 775, 776 (10th Cir. 1991) ("The history of the offense of statutory rape indicates that from ancient times the law has afforded special protection to those deemed too young to understand the consequences of their actions. The more prevalent view seems to be that these statutory provisions did not require the prosecution to show that a defendant believed the victim to be under the lawful age of consent and that no defense was allowed for a reasonable mistake of age.").  Texas has always followed this view, despite the fact that it was never the view of the English common law which did exonerate a statutory rape defendant who made a reasonable mistake of the girl's age.  *See* Myers, *Reasonable Mistake of Age,* 64 MICH. L. REV. 105, 110 (1965) ("Reasonable mistake of age has never been denied as a defense in an English statutory rape case.").

[27] 236 S.W.3d at 794.

[28] *Id.*

[29] *Id.*  Sometimes a mistake-of-fact instruction would not be submitted to the jury: (1) when that mistake is unreasonable as a matter of law (*see Mays v. State*, 318 S.W.3d 368, 383 (Tex. Crim. App. 2010) ("although the general rule is that the jury must determine the relative credibility of the evidence raising a 'reasonable belief' about a fact, reliance upon paranoid

● "Third, the defense did not specify that a mistake could result in liability for a lesser-included offense; rather, the statutory language suggested that the defense applied only when the mistake would completely exonerate the defendant of any offense."[30] But the defense did apply if the defendant would not be guilty of any offense if his reasonable belief had been correct.

We noted that the distinction between mistakes that relate to the culpable mental state (for which no instruction is necessary and for which the defendant need not show his mistake was a reasonable one)[31] and mistakes that relate to other facts or elements (for which an instruction is necessary and for which the defendant must show that his mistake was a reasonable one) was discussed in the 1949 case of *Green v. State*.[32]

In *Green*, the defendant was charged with stealing hogs; his defense was that he

---

beliefs and delusions negates the type of reasonableness that an ordinary and prudent person would have under the circumstances")); and (2) when there is no evidence in the record that would support a finding that the mistake was a reasonable one (*See Hill v. State*, 765 S.W.2d 794, 795-97 (Tex. Crim. App. 1989) (noting that Section 2.03 of the Penal Code requires the defendant to produce evidence supporting a defense, and concluding that the defendant "was entitled to have the jury instructed on the defense of mistake of fact if there was some evidence before the jury that through mistake he formed a reasonable belief about a matter of fact and his belief negated the culpability essential to the State's case."); *see generally Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007)).

[30] *Thompson*, 236 S.W.3d at 794.

[31] *See id.* at 796-97 (explaining that, under the Model Penal Code, a mistake need not be "reasonable" and no special jury instruction need be given because the ignorance or mistake simply negates a required culpable mental state; "The Model Penal Code commentary viewed 'mistake of fact' as being a mere evidentiary issue"); *see also* 1 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 62(d), at 262 (1984) (noting that the Model Penal Code "does not provide a general mistake of fact defense but simply states the obvious: If a culpable state of mind is required by an offense definition and cannot be proven because of the defendant's ignorance or mistake, then the defendant cannot be convicted of the offense.").

[32] 221 S.W.2d 612 (Tex. Crim. App. 1949) (op. on reh'g).

thought that he owned the hogs.  The defendant was entitled to an acquittal if he honestly believed he had a claim of right to the hogs, even if that was an unreasonable belief, because it rebutted any intent to steal.[33]  Thus,  a mistake of fact that rebutted the culpable *mens rea* (1) did not require any mistake-of-fact instruction, and (2) did not need to be reasonable or "arise from a want of proper care."  As we stated in *Thompson*, the *Green* Court held that "a finding of proper care was not required when intent was an element of the offense and the mistake negated that intent."[34]  We noted that *Green* "emphasized that the rule that the jury should not be instructed on the 'proper care' element of mistake of fact applied 'only to those crimes where the unlawful intent is an essential element without which the offense does not arise.'"[35]  *Green* clearly explained that if the mistake of fact directly rebuts the *mens rea*, no instruction on mistake of fact is necessary.  Therefore, it was error to instruct the jury that Green's mistake concerning ownership of the hogs had to be reasonable."[36]

The lesson from *Green* is that an honest mistake that negates the statutory culpable

---

[33] *Id.* at 616.

[34] *Thompson*, 236 S.W.3d at 794.

[35] *Id.* at 795; *see also* ROBINSON, *supra* note 31, at 262.

[36] 221 S.W.2d at 616 (concluding that the defendant need not show that his mistake depended upon reasonable diligence because "[a]n intent to steal property and a bona fide claim of right to take it are incompatible. One who takes property in good faith, under fair color of claim or title, honestly believing that he is its owner and has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is mistaken in such belief, since in such case the felonious intent is lacking"; because defendant's mistake negated the essential element of "intent to steal," jury should not have been instructed that it could acquit only if defendant's mistaken claim of ownership was reasonable as well as in good faith) (internal quotation marks omitted).

*mens rea* need not be reasonable, but an honest mistake that concerns a different element of the offense, such as the surrounding circumstances, must be reasonable. That distinction in *Green* is the basis for the defense of mistake of fact under Section 8.02, which deals solely with "reasonable" mistakes about elements other than the culpable mental state.

**B.    The Model Penal Code Mistake-of-Fact Provision Contrasted to the Texas Provision.**

In *Thompson*, we also contrasted the Model Penal Code provision concerning the mistake-of-fact defense to the corresponding Texas statute. We noted that the 1970 Proposed Texas Penal Code followed the Model Code provision and did not require the mistake to be a reasonable one.[37] Under the proposed code, the mistake-of-fact defense read:

> It is a defense to prosecution that the actor was honestly ignorant or mistaken about a matter of fact or law if his ignorance or mistake negated the intent, knowledge, recklessness, or criminal negligence required to establish an element of the offense charged.[38]

We noted that the drafters of the proposed code "viewed the mistake of fact defense as essentially redundant of the requirement that the State prove the mental element of an offense, but they included the defense as a method of placing upon the defendant 'the burden of producing evidence' so that a mistake of fact is something 'the prosecution does not have to negate unless raised.'"[39]

---

[37] 236 S.W.3d at 798.

[38] STATE BAR COMM'N, 1970 PROPOSED PENAL CODE § 8.02(a).

[39] *Thompson*, 236 S.W.3d at 799.

Mistake of fact was redundant in the 1970 draft because, under the Model Penal Code and the 1970 proposed Texas Code, a culpable mental state attached to every essential element of the offense. As the Practice Commentary to the 1974 Penal Code notes,

> The 1970 proposed code contained a section 6.06 providing that "if the definition of an offense prescribes a culpable mental state but does not specify the conduct, circumstances surrounding the conduct, or result of the conduct to which it applies, the culpable mental state applies to *each element* of the offense."[40]

But the Texas Legislature did not enact that provision. It specifically rejected the suggestion of the original code drafters and maintained its legislative right to attach culpable mental states only to the specific elements that it chose. Thus, Section 6.02(b), the Texas provision dealing generally with culpable mental states, reads quite differently from the corresponding Model Penal Code provision. Section 6.02 reads:

> (a) Except as provided in Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.
> (b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental is nevertheless required unless the definition plainly dispenses with any mental requirement.[41]

In Texas, the required culpable mental state applies to the conduct element, but the Legislature may define offenses in which the culpable mental state also explicitly applies to other elements. The Model Penal code provision, on the other hand, explicitly requires a culpable mental state for each material element. It reads:

---

[40] TEX. PENAL CODE § 8.02, Practice Commentary.

[41] TEX. PENAL CODE § 6.02.

Except as provided in Section 2.05 [defining strict liability offenses], a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, *with respect to each material element of the offense.*[42]

---

[42] MODEL PENAL CODE § 2.02(1).  Sometimes Texas judges clearly would have preferred a Model Penal Code method of attaching a culpable *mens rea* to every element of an offense. Judge Clinton made a persuasive–if intellectually challenging–argument for the wisdom of a hybrid Model Penal Code policy in his concurring opinion in *Lugo-Lugo v. State*, 650 S.W.2d 72, 85-89 (Tex. Crim. App. 1983).  He did it by focusing on the concept of culpability rather than culpable mental states.  But culpability is a broader concept than the more narrow concept of our four culpable mental states–intentionally, knowingly, recklessly, and negligently.  Culpability includes those subsidiary acts or circumstances surrounding conduct or a result.  For example, murder is the act ("cause") and the result ("death").  The culpable mental state goes to the result–a death, but causing a death is only blameworthy as murder if it is the death "of an individual."  The element "of an individual" is an adjectival description of what kind of death the actor must intentionally or knowingly cause.  *Id*. at 88.  As Judge Clinton noted, "[o]bviously, circumstances surrounding conduct could make an otherwise benign act dangerous."  *Id.*

For example, suppose Dangerous Dan is moose hunting and marching through a moose-infested forest when he sees a moving patch of brown, senses a stirring in the bushes, and then hears a loud "moooo."  He intentionally shoots at what he reasonably believes is a moose. Unfortunately, he finds the dead body of a fellow hunter who was wearing a moose-brown jacket and holding a moose-calling horn.  Dan committed the bad act–he caused a death–and he did so with the culpable *mens rea*–intentionally–but he was mistaken about the type of death he caused; he killed an individual rather than a moose.  His mistake negates the kind of culpability required for the offense of murder (shooting a moose during hunting season is not murder), and, if a jury finds that his mistake was a reasonable one, he should be acquitted of murder, even though his mistake did not go to the culpable mental state of "intentionally."  Our law does not punish every intentional killing as murder, only those intentional killings of individuals.  What matters in this example is whether Dan's mistake was a reasonable one under all of the circumstances, so the jury must be instructed about the statutory mistake-of-fact defense.

Now look at an example of a mistake that negates the culpable mental state.  Suppose the same hunting scenario, but this time Dan knows that his wife, not a moose, is hiding in the bushes.  He testifies that he shot his rifle into the air to warn her that a real moose was charging at her from behind.  The bullet goes up and then comes back down into his wife's head, killing her instantly.  His defense is that he mistakenly thought a bullet shot upwards could not come down with enough velocity to hurt someone, and he did not intend to cause anyone's death, much less that of his wife, when he shot his rifle.  In this case, even a stupid, unreasonable mistake, rebuts the culpable mental state of intent, and the defendant does not need, and is not entitled to, an instruction on the statutory defense of mistake of fact.  His defense is like that of Farmer Green who honestly (but perhaps unreasonably) thought the neighbor's hogs were his own. *See Green v. State*, 221 S.W.2d 612 (Tex. Crim. App. 1949) (op. on reh'g).

The Texas Legislature did not incorporate the language about "each material element" into Section 6.02(b), which requires only one culpable mental state or *mens rea* for one criminal act. We must assume that this omission was intentional. The Texas Legislature wanted to be able to add additional *mens rea* requirements to specific elements of certain offenses and omit them in others when it wanted to cast the risk–of a bad act, bad result, or the failure to pay attention to attendant circumstances–upon the actor.

**C.    The Purpose of the Texas Statutory Defense of Mistake of Fact.**

Generally, the legislature has great discretion in deciding upon the elements of a criminal offense and what culpable mental state, if any, applies to which elements of the offense.[43] That discretion is somewhat limited by Section 6.02(b) of the Texas Penal Code which states, "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."[44] Thus, if a statutory offense does not include any culpable mental state–intentionally, knowingly, recklessly, or negligently–courts will presume that the legislature simply forgot and will read one into the statute unless it is manifestly clear that

---

[43] *See Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) ("The Legislature has considerable discretion in defining crimes and the manner in which those crimes can be committed. That discretion is limited only by the Due Process Clause of the federal constitution and the Due Course of Law provision of the Texas Constitution."); *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990) ("the power to create and define offenses rests within the sound discretion of the legislative branch of government"); *see, e.g.*, *Lambert v. California*, 355 U.S. 225, 228 (1957) ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.").

[44] TEX. PENAL CODE § 6.02(b).

the legislature intended a strict-liability offense–one without any culpable mental state.[45]

However, the presumption that the legislature intended a culpable mental state applies only to the criminal conduct or "bad act," not to every element of the offense.[46] One *mens rea* (intentionally, knowingly, recklessly, negligently), plus one "bad act," equals one criminal offense. The culpable mental state must relate to the conduct (or the result), but not to any other element unless the legislature says so. Sometimes the legislature wants to attach a culpable mental state to more than one element, sometimes it does not.[47] For example, the State need not prove that a capital-murder defendant knew that the child he intentionally murdered was under ten years of age,[48] but it must prove that the capital-murder defendant knew that the peace officer he intentionally murdered was a peace officer.[49] By choosing

---

[45] *Aguirre v. State*, 22 S.W.3d 463, 472 (Tex. Crim. App. 1999).

[46] *See id.* at 473 (noting that omitting a culpable mental state from one portion of a criminal statute while including it in a second portion is a clear indication that the legislature intended to dispense with a mental element in that first portion); *see also Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007) (in drafting felony-murder statute, legislature clearly intended to dispense with any additional culpable mental state beyond that required by the underlying felony).

[47] *See Lambert,* 355 U.S. at 288 ("The legislature's authority to define an offense includes the power "to exclude elements of knowledge and diligence from its definition.").

[48] TEX. PENAL CODE § 19.03(a)(8); *see In the Matter of M.A.*, 935 S.W.2d 891, 894 (Tex. App.–San Antonio 1996, no pet.) (concluding that the act of murder "requires intentional and knowing conduct, but there is no additional *mens rea* requirement attached to the age of the victim" under § 19.03(a)(8)). The court of appeals noted that Section 19.03(a)(1) requires the additional culpable mental state that the defendant "knows" that it is a peace officer or fireman that he is intentionally or knowingly murdering, but the legislature omitted that additional *mens rea* when the victim is a child. *Id.*

[49] TEX. PENAL CODE § 19.03(a)(1); *see In the Matter of M.A.*, 935 S.W.2d at 894.

the wording of Section 6.02(b) instead of the corresponding Model Penal Code wording, the Texas Legislature kept the authority to add (or not add) a culpable mental state to additional elements beyond that of the forbidden conduct or result.[50]  It has used that authority to omit additional culpable mental states when it wants to cast the attendant risk upon the actor.[51]

Sometimes a person has taken due care to avoid risk, but he has made a reasonable mistake about some fact surrounding the offense.  He has intentionally done the "bad act," but if the facts were as he reasonably believed them to be, he would not have committed any

---

[50] Some examples include: (1) indecency with a child under Section 21.11(a)(1)(A) ("A person commits an offense if, with a child younger than 17 years . . . the person . . . with the intent to arouse or gratify the sexual desire of any person . . . exposes the person's anus or any part of the person's genitals, knowing the child is present").  The actor must expose his genitals with the "intent" to arouse someone's sexual desire, but he must also "know" that a child is present.  Here, the legislature criminalized the conduct only if the person acted with a specific intent when he exposed himself and he knew about the attendant circumstances; (2) deadly conduct under Section 22.05(b)(2) ("A person commits an offense if he knowingly discharges a firearm at or in the direction of . . . a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied").  Here, the actor must engage in the conduct of shooting a gun with a "knowing" *mens rea*, and he must be at least "reckless" about the attendant circumstances of whether there are people in the building or car; (3) receipt of stolen property under Section 31.03(a),(b)(2) (a person commits an offense if, acting with the intent to deprive the owner, he . . . appropriates property that is stolen and that he knows was stolen by another). *See Polk v. State*, 749 S.W.2d 813, 816 (Tex. Crim. App. 1988) ("The elements of [receiving stolen property] are (1) a person, (2) with the intent to deprive the owner of property, (3) appropriates property, (4) which is stolen property, (5) knowing it was stolen, (6) by another.").

[51] *See, e.g.*, *Schultz v. State*, 923 S.W.2d 1, 3 (Tex. Crim. App. 1996) (only culpable mental state in child abandonment statute, "intentional," goes to act of "abandonment," not to the "circumstances that expose the child to an unreasonable risk of harm" ; "Had the Legislature intended to require that the actor be aware of the risk of harm, it would have been a simple matter to have included language to that effect."); *c.f.* TEX. PENAL CODE § 22.10 (offense of leaving a child in a vehicle requires an intentional leaving as well as knowledge of the circumstances–that the child is "under seven years old and not attended by a person fourteen or older.").

offense.[52]  He is not morally blameworthy, and his mistake negates the kind of culpability or

blameworthiness that the offense is intended to punish.  The mistake-of-fact defense set out

in Section 8.02(a) safeguards conduct that is without guilt from criminal condemnation.[53]

This is a crucial due-process provision that is not merely a redundant rebuttal of the culpable

---

[52] *See, e.g.*, *People v. Watkins*, 2 Cal. App. 4th 589, 594, 3 Cal. Rptr. 563, 566 (Cal. Ct. App. 1992), in which the California court explained the common-law doctrine of mistake-of-fact:

> To determine whether a mistake of fact applies we must assume the facts were as the defendant perceived them.  If under this assumed state of facts the defendant's actions would not have constituted a crime, the defense applies. Conversely, if under this assumed state of facts the defendant's actions would still have been unlawful, the defense does not apply.

*Id.* (citations omitted).

[53] One of the objectives of the Penal Code is to "safeguard conduct that is without guilt from condemnation as criminal." TEX. PENAL CODE § 1.02(4).  For example, the situation in *Hill v. State*, 765 S.W.2d 794 (Tex. Crim. App. 1989), shows how the statutory mistake-of-fact defense protects those whose conduct is without guilt even though they have intentionally committed the forbidden act.  Dr. Hill prescribed Ritalin (a controlled substance), to a female patient. He was convicted of commercially dispensing a controlled substance without a valid medical purpose.  The evidence was undisputed that Dr. Hill intentionally and knowingly dispensed a controlled substance, but his defense was that the woman (an undercover officer) told him that she had narcolepsy and that the symptoms she described and test results were consistent with that condition.  He claimed to be mistaken about a specific fact–the patient had narcolepsy–and a reasonable mistake about that fact negates the kind of culpability required for the offense.  His mistake did not negate the culpable *mens rea* "intentionally dispense a controlled substance," but it did negate an element–"without a valid medical purpose"–and it is this element that makes the "intentional dispensing" a criminal act.  This Court held that Dr. Hill was entitled to an instruction on mistake of fact, and, because the trial judge had denied his request for such an instruction, he was entitled to a new trial.  *Id.* at 797-98.  On the other hand, had Dr. Hill contended that he thought it was aspirin that he was prescribing, that evidence would directly rebut the culpable *mens rea*.  He would not be entitled to an instruction on mistake of fact, but the jury need not believe that his mistake was reasonable.  If he honestly, but stupidly, believed he was prescribing aspirin, he is not guilty of intentionally dispensing a controlled substance.

mental state.[54]

Take the classic law-school example of "mistake of fact" and theft.  Theft is the appropriation of property with the intent to deprive the owner of that property without his effective consent.[55]  The culpable mental state is "with the intent to deprive the owner of property" and the "bad act" is the taking of property without the owner's effective consent.  The statute does not explicitly require the actor to *know* that the owner did not give effective consent.[56]  The legislature cast upon the actor the duty to ensure that he is acting with the

---

[54] Some cases in which the fact mistaken does not directly rebut the culpable mental state, but some other element include those (1) concerning the nature of the substance possessed, *Sands v. State*, 64 S.W.3d 488, 493-95 (Tex. App.–Texarkana 2001, no pet.) (defendant entitled to mistake-of-fact instruction where he testified he thought syringe of methamphetamine contained vitamin B–12); *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011) (defendant claimed that truckload of what was asserted to be marijuana was really hemp to be used for crafts); (2) concerning whether property is "abandoned," *In re F.L.R.*, 293 S.W.3d 278, 280-81 (Tex. App.–Waco 2009, no pet.) (juvenile was entitled to instruction on mistake-of-fact defense when he claimed that he thought the sweatshirt he found in bleachers–when no one else was around and which had no markings or identification on it–had been abandoned, especially when coupled with private investigator's testimony that owner told him that he left his sweatshirt there); (3) concerning whether a person is in a car, *Granger v. State*, 3 S.W.3d 36, 38-39 (Tex. Crim. App. 1999) (murder defendant who testified that he thought that the parked car he fired his gun at was unoccupied was entitled to mistake-of-fact instruction); (4) concerning whether the car that the defendant's car hit had fled the scene of the accident, *Loudermilk v. State*, 993 S.W.3d 382, 384-85 (Tex. App.–Eastland 1999, pet. ref'd) (in trial for failure to leave identification at accident and for leaving scene of collision without giving required information to driver of other vehicle, defendant was entitled to mistake-of-fact instruction when he and his passenger testified that traffic was moving normally after accident, they did not see that other car that came to rest under overpass, and they believed they were victims of "hit-and-run").

[55] TEX. PENAL CODE § 31.03.

[56] *Id.*, § 31.03(b)(1).  Theft of stolen property, prohibited by Section 31.03(b)(2)–the very next section of the theft statute–does require the actor to know that the property was stolen by another when he appropriates it, so it seems apparent that the legislature consciously omitted any culpable mental state for the attendant circumstance of "without the owner's effective consent" from Section 31.03(b)(1).

owner's effective consent when he takes someone else's property.  But here's the law school hypothetical of the Dowager's Umbrella:  Because it was about to rain, everyone who came to the Saturday church meeting, except Dan, brought a black umbrella and placed it into one of the vestry pigeonholes.  Dan received an emergency call to come home during the meeting.  He asked Susie, who was sitting next to him, if he could borrow her umbrella.  She said, "Sure, take it and keep it.  I have another.  Mine is the black umbrella in the No. 2 pigeonhole."  Dan took the black umbrella from the No. 2 pigeonhole and left.  Unfortunately, that black, gem-encrusted umbrella belonged to the Dowager who had moved Susie's umbrella to make room for her own.  She filed theft charges against Dan.  Dan appropriated the black umbrella from pigeonhole 2, intending to keep it, and he did not have the Dowager's consent.  He made a mistake and took the wrong umbrella.  But he acted reasonably in taking what he thought was Suzie's black umbrella from pigeonhole 2 because he did have her consent.  His conduct is morally blameless.  His mistake negates the kind of culpability required of the offense of theft–taking someone else's property without their consent.  If his belief had been correct (the umbrella he took was Suzie's), he would not have committed the offense of theft.[57]  The mistake-of-fact defense exculpates Dan.

The law should not punish those who have made reasonable mistakes about the facts

---

[57] *See* ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 1045 (3d ed. 1982). The professors set out the general rule:

> [M]istake of fact will disprove a criminal charge if the mistaken belief is (a) honestly entertained, (b) based upon reasonable grounds and (c) of such a nature that the conduct would have been lawful and proper had the facts been as they were reasonably supposed to be.

or circumstances surrounding their acts. That is the purpose of Section 8.02(a), the Penal Code defense of mistake of fact. The statutory defense does not go to the culpable mental state set out in the penal offense because, as Professors Perkins and Rollins explain, "even an unreasonable mistake, if entertained in good faith, is inconsistent with guilt if it negates some special element required for guilt of the offense such as intent or knowledge."[58] Honest but unreasonable mistakes that directly rebut the required culpable mental state simply negate one of the State's elements, and "[i]f any such element is found to be wanting, guilt has not been substantiated; and hence if proof of a mistake of fact, even without the support of reasonable grounds, negatives the existence of such an element, it also disproves the charge itself."[59]

To return to the 1949 case of *Green v. State*: If Farmer Green honestly believed that the hogs he killed were his own, it does not matter if his mistake was reasonable. He did not commit the offense of theft because he did not intend to appropriate someone else's property. He is rebutting the State's element of "intent to deprive" and he does not invoke the mistake-of-fact defense. If, however, he reasonably but mistakenly thought that the hogs belonged to Farmer Jones (when in fact they belonged to Farmer Dell) who had given Farmer Green consent to slaughter his hogs, then the statutory defense applies and Farmer Green is entitled to an instruction on mistake of fact. Farmer Green had the intent to deprive Farmer Jones of

[58] *Id.* at 1046.

[59] *Id.*

his hogs, but he thought that he had the owner's consent to do so. If the hogs had been Farmer Jones's then his "conduct would have been lawful and proper had the facts been as they were reasonably supposed to be."[60]

The question in this case is whether the statutory defense of mistake-of-fact that had existed in Texas from at least 1867 until 1974 was carried forward in the 1974 Penal Code or whether the Texas Legislature intended to abandon its tried-and-true approach to that defense by rendering the statutory defense a virtual nullity. That former approach was simple and effective: a defendant was entitled to raise a mistake of fact relating to any fact required for conviction, but it had to be reasonable one before it would exculpate him. The two exceptions to the general statutory rule were: (1) if the mistake negated the culpable mental state, no instruction was needed and the defendant's good faith (even if stupid) mistake would exculpate him; and (2) the mistake-of-fact defense did not apply to statutory rape because a child under the legal age could not consent to intimate acts.

Unfortunately, many cases from this Court interpreting and applying the post-1974 Penal Code statutory defense of mistake of fact versus rebuttal of the culpable mental state have been less than clear. Take, for example, *McQueen v. State*,[61] in which this Court held that a mistake-of-fact defense applied in an unauthorized use of a motor vehicle case when the defendant claimed that he had consent to drive what he mistakenly believed was Tim

---

[60] *Id.* at 1045.

[61] 781 S.W.2d 600 (Tex. Crim. App 1989).

Eden's motorcycle.[62]  The statutory defense of mistake of fact under Section 8.02 should, and does, apply to this scenario.  McQueen's mistaken belief, if reasonable, would negate the kind of culpability required for the offense because, had his belief that Tim Eden did own the motorcycle been true, then McQueen would not have been guilty of any crime.  Unfortunately, in *McQueen*, this Court perpetuated the mistake of quoting a statement from *Beggs v. State*,[63] citing the Practice Commentary to Section 8.02 that the "kind of culpability" specified in Section 8.02 means "culpable mental state."[64]  But that commentary was written by a practitioner, not any court or legislator, and it was written for the 1970 Proposed Penal Code, not the provision that was actually enacted in 1974.  That single little error–relying upon an inapplicable commentary by a practicing lawyer rather than the explicit language of the  statute–has been responsible for virtually all of the subsequent problems in addressing the mistake-of-fact defense.  Because of that initial error, this Court, in *McQueen*, concluded that it would attach a culpable mental state of "knowing" to the element of "without the effective consent of the owner" so that the mistake-of-fact defense would apply to a culpable mental state.  But the Legislature did not attach a culpable mental state to "without the

---

[62] *Id*. at 603 ("The mistake of fact was the defendant's erroneous belief that he had the owner's consent to use the vehicle.  Since a mistake of fact defense is available only if it negates the culpable mental state required for he commission of the underlying offense, . . . such requisite mental state must pertain to the defendant's belief about the owner's effective consent.").

[63] 597 S.W.2d 375 (Tex. Crim. App. 1980).

[64] 781 S.W.2d at 603 n.2 (citing *Beggs*, 597 S.W.2d at 378).

effective consent of the owner," and it was not required to do so.[65]  It could, and did, cast the

duty of care and inquiry upon the actor to inquire as to ownership.  But, just as with the

Dowager's Umbrella, if a person made a reasonable mistake about who the owner was and

whether he had that person's consent, then he may invoke the statutory defense of mistake

of fact.

### D.    Mistake-of-Fact and "Licensed to Practice Law."

The mistake-of-fact defense indisputably would have applied to the offense of falsely

holding oneself out as a lawyer under the pre-1974 Penal Code provision concerning mistake

---

[65] In *McQueen*, this Court implied that the legislature just forgot to include an explicit culpable mental state for the element of "without the effective consent of the owner" and declared that the offense would be one of strict liability unless it judicially added a second one:

> Thus, once the State proved that the vehicle was operated at all, the requisite mental state with regard to the nature of conduct would be self-proved, (we cannot foresee any time one would operate a vehicle unintentionally or unknowingly), and the defendant would be held liable regardless of anyone's awareness of the owner's consent or lack thereof.  To require culpability only as to the otherwise lawful act of operating a vehicle wholly fails to "safeguard conduct that is without guilt from condemnation as criminal."

*Id.* at 604.  That would be a persuasive argument if the statutory defense of mistake of fact did not exist and could not be invoked to the element of "without the owner's effective consent." And, in fact, the *McQueen* Court did not require the State to prove that McQueen knew he did not have the motorcycle owner's effective consent; proof "that appellant did not have the consent of Bobby Akin, the owner of the motorcycle" was sufficient to prove that "appellant knew he did not have Akin's consent." *Id.* at 604-05.  This was all a very topsy-turvy way of coming to the right conclusion.  If the Court had not been beguiled by the inapplicable practice commentary about how the Texas Legislature supposedly intended that the phrase "the kind of culpability required for the offense" really meant the different phrase, "the culpable mental state," this Court and others would not have made the mistake of inappropriately adding multiple culpable mental states to offenses when the Legislature did not do so.  Presumably the Legislature knew that it did not need to do so because the statutory defense of mistake of fact was available to a defendant who had exercised reasonable care, did make reasonable inquiry, and whose reasonable mistake negated the required culpability for the offense.

of fact.  Indeed, in the 1889 case of *Pettit v. State*, the court of appeals held that the defendant

doctor, charged with practicing medicine without having first filing his certificate, was

entitled to an instruction on the statutory defense of mistake.[66]  Practicing medicine without

filing one's license is directly analogous to, and substantially similar to practicing law

without a license, so if the Texas Legislature carried forward its former mistake-of-law

statute into the 1974 Penal Code, that defense would certainly apply to Section 38.122.

Presiding Judge Keller's opinion in *Thompson* is the most recent discussion of the

purpose and history of the current Texas provision dealing with the mistake-of-fact defense

under § 8.02(a).[67]  The same understanding of the mistake-of-fact defense in *Thompson*

would also apply to reasonable mistakes concerning whether the defendant was properly

licensed and authorized to practice law in Texas.

The offense of falsely holding oneself out as a lawyer has only one culpable mental

state: the intent to obtain an economic benefit for himself.[68]  Thus, a person is not subject to

---

[66] 14 S.W. 127, 127 (Tex. App. 1889) (defendant had obtained his medical certificate and given it to a man who said he was going to the county-seat that day and would record the license, but evidence showed that this man suddenly fell ill and did not make the trip, and defendant had, meanwhile, treated patients that day; "If the defendant, at the time he practiced medicine as charged against him, labored under the mistake that his certificate had been filed for record in Van Zandt county, and if said mistake did not arise from a want of proper care on his part, he was entitled to be acquitted.").

[67] *Id.* at 789; *see also Louis v. State*, 393 S.W.3d 246, 252-54 (Tex. Crim. App. 2012) (following *Thompson,* and holding that defendant in capital-murder prosecution was entitled to mistake-of-fact instruction that he reasonably thought his "spankings" of child would not cause serious bodily injury).

[68] TEX. PENAL CODE § 38.122.  *See Satterwhite v. State*, 979 S.W.2d 626, 628 (Tex. Crim. App. 1998) (offense of falsely holding oneself out as a lawyer has three elements: "First,

criminal penalties under this statute if he falsely says that he is a lawyer, but he does not have any intent to benefit economically from that falsehood.  Some non-criminal examples, as the plurality notes, include a third-year law school student's "puffery" to friends and relatives that he is a lawyer, the inmate "writ-writer" who files legal papers for fellow inmates as an act of friendship,  the "catch-me-if-you-can"[69] pseudo-lawyer who provides nothing but *pro bono* representation.[70]

In this case, the plurality explains that the Legislature could, and did, cast the duty of complying with all of the Texas attorney licensing requirements upon the actor.  The practice of law is a highly regulated profession, and legislatures may reasonably heighten the duties of those in particular professions that affect public health, safety, or welfare.[71]

---

appellant intended to obtain an economic benefit for himself by representing Mr. Lemke. Second, appellant held himself out as a lawyer to Lemke. Thirdly, appellant was not in 'good standing' with the State Bar at the time he represented John Lemke because he was in default in the payment of his bar dues resulting in the suspension of his law license.") (footnote omitted).

[69] *See Catch Me If You Can* (Dreamworks 2002), the Steven Spielberg movie in which Leonardo Di Caprio played the role of Frank Abagnale, Jr., who swindled millions as he falsely acted as a Pan Am pilot, a doctor, and a prosecutor.

[70] *See* Plurality Op. at 13 n.11.

[71] *Morissette v. United States*, 342 U.S. 246, 254-56 (1952) (noting that "public welfare offenses" regulate "the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare."); *see also Aguirre v. State*, 22 S.W.3d 463, 475 n.44 (Tex. Crim. App. 1999) (noting that the members of certain professions may be required to meet "special skill and attention" and "if the law is broken there will be a suspicion that it was a deliberate breach due to self-interest") (quoting GLANVILLE WILLIAMS, CRIMINAL LAW 235 (2d ed. 1961));  *Tovar v. State*, 978 S.W.2d 584, 586-88 (Tex. Crim. App. 1998) (violation of the Open Meeting Act required only the culpable mental state of knowingly calling a meeting, not that the person knew whether an open meeting was required).

The controlling purpose of all laws, rules, and decisions forbidding unlicensed persons to practice law is to protect the public against persons inexperienced and unlearned in legal matters from attempting to perform legal services. The objective is to protect the public against injury from acts or services, professional in nature, deemed by both the legislature and the courts to be the practice of law, done or performed by those not deemed by law to be qualified to perform them.[72]

But the crime of falsely holding oneself out as a lawyer is not a strict liability offense as it does contain a culpable mental state requirement: the intent to obtain an economic benefit.[73] And, to protect against conviction of a crime when a person has taken all reasonable care to ensure that he is in compliance with the pertinent attorney licensing requirements, a defendant may invoke the statutory mistake-of-fact-defense.[74] Of course, if the former Penal

---

[72] *Brown v. Unauthorized Practice of Law Committee*, 742 S.W.2d 34, 41-42 (Tex. App.–Dallas 1987, writ denied) (citations omitted).

[73] *See* WILLIAMS, *supra* note 71, at 244 ("we cannot classify crimes exclusively into crimes of strict responsibility and crimes requiring fault. The same crime may be of strict liability in respect of one element and require fault in respect of another."); *see, e.g.*, *Zubia v. State*, 998 S.W.2d 226 (Tex. Crim. App. 1999) (in offense of injury to child, culpable mental state does not apply to age of child); *Johnson v. State,* 967 S.W.2d 848 (Tex. Crim. App. 1998) (same for offense of indecency with child).

[74] *See Satterwhite*, 979 S.W.2d at 630 (Mansfield, J., concurring). In this prosecution for falsely holding oneself out to be a lawyer, Judge Mansfield noted:
> Concern has been expressed that our holding in this case might lead to criminal liability for, potentially, thousands of attorneys who inadvertently send their bar dues in a few days late, whose checks are "lost in the mail" or who, accidently, send a check for the wrong amount. Another situation, quite common, is where the check is returned for insufficient funds when the remitter, in good faith, believed there were sufficient funds in his account to cover the check. I believe this concern is misplaced. The State must prove intentional, knowing or reckless conduct on the part of the accused to obtain a conviction under Texas Penal Code § 38.122; such would rarely be provable in the instances cited in the two previous sentences. In any event, anyone indicted under section 38.122, where such circumstances existed, would have available the defense of mistake of fact under Texas Penal Code § 8.02.

Code mistake-of-fact statute was carried forward into the 1974 Penal Code, a mistake-of-fact defense would apply even to strict-liability, public-welfare offenses such as the sale of adulterated food or using a false scale, because that defense applied under the former law.[75]

To establish his entitlement to a mistake-of-fact instruction in the prosecution of an offense under Section 38.122, the defendant must offer some evidence that he reasonably believed that

(1)     He was currently licensed to practice law in Texas, some other state, or some other country;

(2)     He was currently in good standing with the State Bar of Texas; and

(3)     He was currently in good standing with the state bar or other licensing authority of the licensing state or jurisdiction.[76]

A defendant is not entitled to a jury instruction on his mistake-of-fact defense unless he has offered some evidence to support a finding on each of these three requirements.

**E.     Appellant Was Not Entitled to a Mistake-of-Fact Instruction.**

In this case, appellant argues that he offered some evidence to support a finding that he reasonably believed that he was licensed to practice law in Mexico and was in good standing with the licensing authority in Mexico.  He submitted a written jury instruction to

---

*Id.*

[75] *See supra*, notes 14 & 15.

[76] *See* TEX. PENAL CODE § 38.122.

that effect.[77]   Unfortunately, appellant failed to offer any evidence (or instruction) that he reasonably believed that he was a member in good standing of the State Bar of Texas.[78]

A person who is licensed to practice law in some other state or country cannot just waltz into Texas and set out his attorney shingle.  He must comply with the Texas State Bar requirements first.  It is patently unreasonable for any attorney to think that he could freely

---

[77] Appellant's requested instruction read as follows:

You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

A reasonable belief means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

So if you find from the evidence in this case that at the time the defendant held himself out as an attorney licensed in Mexico that he acted under a mistake of fact, that is, the defendant had a reasonable belief that he was licensed to practice law in Mexico and was in good standing with the licensing authority in Mexico, or if you have a reasonable doubt thereof, you will acquit the defendant and find the defendant "not guilty."

[78] The trial judge instructed the jury on "good standing" as follows:

"Good Standing with the State Bar of Texas" means:
(1)     Being a "Member in Good Standing" of the State Bar of Texas; or
(2)     Being certified to practice in Texas as a Foreign Legal Consultant
        by the Texas Board of Law Examiners.

A "Member in Good Standing" of the State Bar of Texas is someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission to the bar of Texas and who is not in default of payment of dues and who is not under suspension from practice.

A "Foreign Legal Consultant" is someone certified under the rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas.

roam the world practicing law in whatever jurisdiction he desired simply because he was licensed to practice law in some other jurisdiction.

Here, the trial judge noted that appellant had not pointed to any evidence that he had the reasonable but mistaken belief that he was in good standing with the State Bar of Texas and therefore declined to give an instruction on mistake of fact. Appellant argued that "a mistake of fact can go to any of the elements of the offense and not to all of them at one time." True enough, but appellant's mistaken belief about being licensed in Mexico and in good standing in that jurisdiction, if true, would not "negate the kind of culpability required for the offense" and would not exonerate him from guilt. The practical test for whether a defendant is entitled to a mistake-of-fact defense is this: If the facts were as the defendant mistakenly believed them, would he be innocent of the charged offense?[79] In this case,

---

[79] The cases decided under Texas's former mistake-of-fact statute, did not require that the mistake totally absolve the defendant from all blame or culpability, rather it would exculpate him of the *charged* offense. For example, in one delicious 1920 case, *Vyoral v. State*, 224 S.W. 889 (Tex. Crim. App. 1920), the defendant was charged with aggravated assault of a female during a "road rage" altercation in which he, from his car, threw a wrench at Mrs. Garrett, the driver of a horse buggy. The sole aggravating factor in the case was the fact that the victim was a female, otherwise the offense was a simple assault. The defendant claimed that he was entitled to an instruction on mistake of fact when he testified that he reasonably believed that Mrs. Garrett was a man because she was "wearing a man's hat and shirt, and presenting the general appearance of a man while in the buggy[.]" *Id.* at 889. We explained,

> [I]f Mrs. Garrett was wearing the apparel of a man, and presented the appearance of one, and appellant was misled into the belief that she was a man, without fault or want of care upon his part, we know of no reason why he would not be afforded the benefit of the law as applied in criminal cases of an honest mistake of fact. The mistake, if the jury found it existed, while it would not have excused, it would have mitigated, the offense.

*Id.* This mistake did not, of course, rebut the defendant's culpable mental state of intentionally or knowingly causing bodily injury, nor did it exculpate him from *all* culpability, but it did mitigate

appellant would not be innocent, because he was required to have a reasonable belief that he was in good standing with the State Bar of Texas as well as being licensed and in good standing in Mexico.

I respectfully disagree with the plurality's holding that the mistake-of-fact defense cannot apply to any element except the culpable mental state, but because appellant failed to offer evidence of his entitlement to a mistake-of-fact instruction, I concur in the Court's judgment.

Filed: May 15, 2013
Publish

---

the offense, and therefore he was entitled to such an instruction.

Suppose a modern-day actor was charged with aggravated robbery of an elderly person and article 41 was still Texas law. If the defendant reasonably believed that the person he was assaulting and whose property he was trying to take was, in fact, under the age of 65 (think Sally Field, Diana Ross, Mia Farrow, Al Pacino, Harrison Ford, Robert Redford), the defendant could rely on *Vyoral* as precedent for his entitlement to a mistake-of-fact instruction that could lower the offense from a first degree felony offense under Section 29.03(a)(3), to a second degree robbery under Section 29.02(a).